CHARLES F. KARSTEN *et al.* Appellants, *vs.* FREDA KARS-TEN *et al.* Appellees.

*Opinion filed June 21, 1912.*

1. WILLS—*extrinsic evidence is not admissible to supply omissions in will.* While surrounding facts and circumstances may be proved to explain a latent ambiguity which is not found upon the face of the instrument itself, extrinsic evidence cannot be admitted to explain an ambiguity which appears on the face of the will or to supply omissions and deficiencies in the will.

2. SAME—*that, only, is the testator's will which is in writing and signed by him.* Under the statute that, only, is the testator's will which is in writing and signed by him, and to allow deficiencies and omissions in a will to be supplied by extrinsic evidence would render nugatory the provisions of the statute.

3. SAME—*extrinsic evidence not admissible to make a will for the testator.* Extrinsic evidence is never admissible for the purpose of making a will for the testator even though it establishes the fact that he intended to make a will.

4. SAME—*circumstances cannot import into a will an intention not expressed.* The intention to be ascertained is not one which it may be inferred existed in the mind of the testator but is the intention expressed in the language of the will, and surrounding circumstances cannot be resorted to to import into a will an intention which is not there expressed.

5. SAME—*gift cannot rest upon conjecture.* There is a strong presumption that a testator did not intend to die intestate as to any of his property, and a gift will be sustained without any express or formal words if the intention to make it clearly appears from the will as a whole, but a gift cannot rest upon mere con-

jecture, based upon the fact that the testator owned a large amount of land which he failed to dispose of by the will.

6. SAME—*a want of formality does not defeat will if the testator's intention can be ascertained.* Great allowance should be made for the ignorance or lack of skill of one who writes a will, and no want of technical formality will prevent the courts from executing the intention of the testator, provided the intention can be ascertained from the language used, however informal.

7. SAME—*will must indicate some subject of the devise or bequest.* After the disposition of a portion of an estate by devises and bequests, a provision may be sustained as a residuary disposition of what remains without the use of the word "residue" or "remainder," but it is essential that the will indicate some subject of the devise or bequest.

8. SAME—*what provision cannot be sustained as a residuary devise or bequest.* A paragraph of a will reading, "Second that is my Will that My Daughter Mary Spellmeyer and My Son Charles F. Karsten and My Daughter annie Knox shall be Equally Devided between all three," entirely omits the subject of the devise and cannot be sustained as an intended gift of the residuary estate.

9. SAME—*when question of correcting description of devise is immaterial.* The question of correcting a description of land so that it may be sold, as provided in the will, and the proceeds divided is immaterial, where there is nothing alleged in the bill to show that it would be for the best interests of the parties to receive the proceeds instead of receiving the land itself, which, if the description is not corrected, will descend as intestate property to the same persons and in the same proportions as would the proceeds of the land.

10. SAME—*provision made in case all legatees shall die means die before the testator.* A provision in a will authorizing the sale of certain land and the payment of specific bequests to three named grandchildren, and providing, if they all die, that "the grant shall fall back to the original heirs," means die before the testator, and if they are all living at the testator's death they are entitled to their legacies.

APPEAL from the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

CLOUD & THOMPSON, for appellants.

GEORGE A. WILLIAMS, JAMES H. CHAPMAN, and FRANK LINDLEY, (H. H. KERR, guardian *ad litem*,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John Karsten died on July 9, 1910, leaving Sofie Karsten, his widow, Mary Spellmeyer, Charles F. Karsten and Annie Knox, his children, and Freda Karsten, Reuben Karsten and Luella Karsten, his grandchildren, minor children of William Karsten, a deceased son. He owned four hundred acres of land in Ford county, a lot and a half in the village of Melvin and some personal property. He left a last will and testament, the material parts of which are as follows:

"First. That I hereby Will unto my Beloved Wife all my Real and Personal Property Sofie Karsten as long as she may live after her Death and the West Half (W 1-2) of the North East Quarter (1-4) of Section twenty-three (23) Township twenty-five (25) Range Eight (8) East (3) P. M. and the North Half (1-2) of the North West Quarter (1-4) of section twenty-four (24) Township twenty-five (25) Rainge (8) East of the Third P. M. Shall be sold to Pay all Expenses and to pay to the Hears of My Deceased Son the Sum of one Thousand Dollars Each that is to say Fridie Karsten and Ruben Karsten and Luella Karsten that if they all three Die that the Grant shall fall Back to the Original Heirs.

"Second that is my Will that My Daughter Mary Spellmeyer and My Son Charles F. Karsten and My Daughter annie Knox shall be Equally Devided between all three.

"Third: that the One of My Children shall take care of one or either of us shall receive for their recompenc the sum of One Thousand Dollars, ($1000.00)

"Fourth: that it is My Will that My Executor plase a Monument in one year after our demice not to Exceed the sum of Three Hundred Dollars, $300.00.

"Fifth: that any of My Heirs oing the Estate any notes shall be counted in their share."

The widow, Sofie Karsten, died on March 2, 1911, and on May 29, 1911, Charles F. Karsten, as executor of the will, filed in the circuit court of Ford county the original bill in this case against the devisees, legatees and heirs-at-law, including himself, asking the court to construe the will. The court permitted an amendment making the appellants, Charles F. Karsten in his own right and Mary Spellmeyer and Annie Knox, complainants, and the appellees, Charles F. Karsten as executor and the three minor grandchildren and others, defendants. The amended bill alleged that the provision of the second item of the will expressed in the following words, "that is my Will that My Daughter Mary Spellmeyer and My Son Charles F. Karsten and My Daughter annie Knox shall be Equally Devided between all three," was operative as a devise and bequest to the three persons named therein of the residue of the estate, real and personal, after the payment of debts, costs of administration, the cost of the monument and the specific bequests mentioned in the will; that the testator did not own the north half of the north-west quarter of section 24 but did own the south half of said north-west quarter, and owned no other land in said section; that through the inexperience of the scrivener and the want of correct knowledge of the description of the land the word "north" was inserted instead of the word "south;" that the testator intended to dispose of land he owned in section 24, and that the will should be construed by striking out the word "north" and making the same read, "the south half of the north-west quarter." Charles F. Karsten in his capacity as executor was defaulted and a guardian *ad litem* was appointed for the minor defendants. The guardian demurred specially to the bill, and the court sustained the demurrer as to all of the grounds but one. The complainants elected to stand by their amended bill, and the court entered a decree construing the will and finding that the testator died intestate as to all of his property ex-

cept the west half of the north-east quarter of section 23, which he owned and which he ordered to be sold, and that the intestacy included any balance of the fund arising from the sale of that tract of land after paying the expenses of administration arising from any deficiency in the personal property, the bequests to the minor children, $1000 to the child or children who took care of the testator or his wife, and the cost of the monument. From that decree this appeal was taken.

The important question to be determined is whether the testator by the second item of his will devised and bequeathed the residuary estate, real and personal, to the son and two daughters therein named. Inasmuch as the statute requires wills to be in writing and attested by witnesses, the settled rule is that while surrounding facts and circumstances may be proved to explain a latent ambiguity which is not found upon the face of the instrument itself, extrinsic evidence cannot be admitted to explain an ambiguity which appears on the face of the will or to supply its omissions and deficiencies, since that would be to make a will for the testator. Under the statute, that, only, is the will of the testator which is in writing and signed by him, and the statutory provisions would be rendered nugatory and the door opened to all the evils which the law requiring wills to be in writing and attested was designed to prevent, "if, when the written statement failed to make a full and explicit disclosure of his scheme of disposition, its deficiencies might be supplied or its inaccuracies corrected from extrinsic source." (1 Jarman on Wills,—4th ed.—409.) Extrinsic evidence is a mere aid to construction and is never admissible for the purpose of making a will for the testator, even if it establishes the fact that he intended to make one, if he did not, in fact, do so.

The facts alleged in the bill not appearing on the face of the will are, that the testator owned four hundred acres of land in Ford county and a lot and a half in the village

of Melvin; that he was born in Germany, was sixty-seven years old and was not versed in such matters as executing wills. Great allowance is to be made for ignorance or want of skill of one who writes a will, and no want of technical formality will prevent the courts from executing the intention of the testator if it can be ascertained from the language employed, however informal it may be, but we are unable to determine the intention of the testator from his birthplace, age or experience in the making of wills. The fact of ownership of a large amount of land not disposed of by the will is material as an aid to construction, because there is a legal presumption against partial intestacy. There is a strong presumption that a testator did not intend to die intestate as to any of his property, and a gift will be sustained without express or formal words if the intention to make it clearly appears from the will as a whole. But such a gift cannot rest upon conjecture. (*Connor* v. *Gardner,* 230 Ill. 258.) The intention is not one which it may be inferred existed in the mind of the testator but it is the intention expressed in the language of the will, and the rule is inflexible that surrounding circumstances cannot be resorted to for the purpose of importing into a will any intention which is not there expressed. (*Lomax* v. *Lomax,* 218 Ill. 629.) The mere fact that a testator owned property would not justify a court in holding that he disposed of it by will unless an intention to dispose of it is found in the will itself, because that would prevent partial intestacy in practically every case. It is undoubtedly true that after the disposition of a portion of an estate by devises and bequests a provision might be interpreted as a residuary disposition of what remained without the use of the word "residue" or "remainder," or other formal expression, but the will must indicate some subject of the devise or bequest. In this case the testator by the first item had merely directed the sale of one tract of land that he owned and another that he did not own, for the

purpose of paying the sum of $1000 to each of his three grandchildren, with a provision that if they should all die the grant should fall back to the original heirs, which meant the death of all in the lifetime of the testator. (*Fifer v. Allen,* 228 Ill. 507.) The grandchildren were living at the death of the testator, so that the provision for the sale for their benefit became effective. The testator, of course, intended by the second item to give something to the three children therein named, but whatever it was, he failed to indicate the subject matter in any way. The second item is devoid of sense or meaning, and it would require the insertion of matter not expressed by the testator to make it a residuary clause devising the balance of the property not previously disposed of, to the three children therein named. The second item is followed by the third, which provides that the one of the children who should take care of the testator or his wife should receive the sum of $1000, and the fourth that the executor should erect a monument not exceeding in cost $300. The fifth item provides that if any of the heirs owe the estate any notes the same shall be counted in their share, but that provision would apply just as aptly to a devise of specific property or any portion less than the whole of the residuary estate. The subject of the devise in the second item was not merely uncertain or indefinite but was entirely omitted, and as there was nothing mentioned, the court had no power to add to it by inserting in it something that did not appear. *Engelthaler* v. *Engelthaler,* 196 Ill. 230.

The testator directed the sale of the tract of land which he owned and the north half of the north-west quarter of section 24, which he did not own, and the proceeds were to be devoted to paying expenses and the sum of $1000 to each of the three grandchildren. The bill alleged that the word "north" should be stricken out as a false matter of description and the will be held to direct the sale of the south half of the quarter section. The argument against

the conclusion of the court is mainly based upon the presumption against partial intestacy, but that presumption is overcome by the fact that the testator did not dispose of all his estate but died intestate as to a part of it. There is no occasion, however, to enter upon the consideration of the many questions raised by counsel respecting the striking out of words of false description, for the reason that the question has become one of no practical importance. It does not appear that the sale of the tract which the testator did own would be insufficient for the payment of the expenses and legacies to be paid out of the proceeds of the sale, and there was no fact alleged showing that it would be conducive to the interests of the complainants that the south half of the quarter section should be sold and the proceeds distributed, rather than it should pass to them and the other heirs-at-law as land. It was not alleged that any one of the children took care of the testator and his wife or became entitled to $1000, if that sum was to be paid out of the proceeds of the sale of the specific property ordered to be sold, and any surplus would go in exactly the same proportions to the same heirs as if the land itself passed as intestate property. The guardian *ad litem,* acting, so far as we can discover, in the interest of the minors who were to receive the legacies, demurred to the bill with repect to the construction sought to be put upon it by the complainants, evidently deeming it for the best interest of the minors that the land should not be sold. As we have held that the complainants are not entitled, under the second item, to any surplus that might remain from a sale and will take their interests as heirs in any intestate estate, we do not see any benefit that would result to them by striking out any part of the description and selling land to divide the proceeds. No question is raised in this court concerning the propriety of Charles F. Karsten being on both sides of the case.

The decree is affirmed. ·　　　　　　*Decree affirmed.*