EDGAR E. CRABTREE, Trustee, Appellant, *vs.* KATHERINE
M. DWYER *et al.* Appellees.

*Opinion filed December 17, 1912—Rehearing denied Feb. 6, 1913.*

1. WILLS—*extrinsic evidence is not admissible to modify the
language of a will.* Where the language of a will is obscure or
doubtful, the circumstances surrounding the testator at the time the
instrument was executed, may be shown for the purpose of identi-
fying the subjects or objects of the testator's bounty but not for
the purpose of changing or modifying the language of the will.

2. SAME—*object of construction of a will.* The object of the
construction of a will is to ascertain the intention which the tes-
tator has expressed in the language of the will and not one which
he may be supposed to have had in his mind but has not expressed,
and evidence of surrounding circumstances cannot be resorted to
to import into the will an intention which is not there expressed.

3. SAME—*language having a settled technical meaning must be
so construed.* Where the language used in a will has a well set-
tled technical meaning it must be given such meaning in constru-
ing the will, unless it clearly appears from the context that the
words were not used in that sense.

4. SAME—*when the word "heirs" cannot be given meaning of
"children."* The word "heirs," used in a clause of a will, cannot
be construed as meaning "children" merely because the same word
may not have been used with strict accuracy in the other clauses,
where it was not used inappropriately in any of the clauses.

5. SAME—*when daughter takes a fee simple under the rule in
Shelley's case.* Under the rule in *Shelley's case* a devise of land
to the testator's daughter, "to have and to hold the same during
her natural life, and at her decease the same shall fall to her
heirs," passes a fee simple title to the daughter, where there is
nothing in the will to show that the word "heirs" was not used
in its technical sense.

APPEAL from the Circuit Court of Scott county; the
Hon. JAMES A. CREIGHTON, Judge, presiding.

WILLIAM N. HAIRGROVE, and KIRBY, WILSON & BALD-
WIN, for appellant.

BELLATTI, BARNES & BELLATTI, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The only question for decision in this case is the quantity of the estate in a quarter section of land devised to Katherine M. Dwyer by the will of her father, John Knoeppel. She was adjudged a bankrupt, and her trustee in bankruptcy filed a bill to set aside a conveyance of the land which she had made. If she had a life estate, only, in the land it is not claimed the conveyance was fraudulent, but the complainant contends that she owned the land in fee simple and that the conveyance was a fraud on her creditors. The court found the devise was of a life estate, only, and dismissed the bill, and the complainant appealed.

The will, omitting the formal commencement and conclusion, is as follows:

"*First*—It is my will that all my funeral expenses and all my just debts be fully paid. And a tomb stone erected on my grave, semulary to the one already stands on my lot, or as they think best.

"*Second*—After the payment of my just debts and funeral expenses, it is my will that my executor named herein shall have full power to collect all outstanding moneys, notes, mortgages, and all other claims of which I may die possessed.

"*Third*—It is my will that my executor shall have one hundred dollars for services he may render in the adjustment of the said estate. Should any expenses unforeseen occur, then said expense shall be equally bourn by the heirs of my estate.

"*Fourth*—It is my will that my executor shall be impowered to give deeds, sign and receipt the same as I have, without any order of court to convey said property or real estate as mentioned hereafter.

"*Fifth*—It is my full and earnest wish that my executor H. C. Knoeppel shall not be required to give a bond for the settlement of my estate. The foregoing are the

provisions of my will, and trusting the integrity of my heirs, as hereinafter named, that they will so carry them out as provided.

"*Sixth*—I now declare my last will and testament, to-wit: I give and bequeath to my daughter, Katherine, wife of T. C. Dwyer, the S. E. quarter of section one, township (15) fifteen, range (13) thirteen, west of the 3d P. Meridian, county of Scott and State of Illinois, containing (160) acres more or less. To have and to hold the same during her natural life. And at her decease the same shall fall to her heirs. This land shall be valued at fifty dollars per acre, or a total of eight thousand dollar, this to be her full share of my estate, except as hereinafter provided.

"*Seventh*—I all so give and bequeath to my son Henry C. Knoeppel the following described real estate. The W. ½ E. ½ N. W. section (7) seven, township (15) fifteen, range (12) twelve, 34½ acres more or less, in the county of Morgan and State of Illinois. This land is valued at $50 fifty dollar per acre, or a total of seventeen hundred and twenty-five dollar. Also the E. ½ S. ½ S. W. section (6) sixth, township (15) fifteen, range (12) twelve, 34 acre more or less, in the county of Morgan and State of Illinois. This land is valued at fifty dollar per acre, or total of seventeen hundred dollar. I further give and bequeath to my son Henry C. Knoeppel out of my personal property, money, notes, mortgages or claims, of which I may die possessed, the sum of four thousand five hundred and seventy-five dollar. So that each of my children above mentioned shall have share and share alike, of my estate.

"*Eighth*—I will say further, should there be any excess of property above the amount of sixteen thousand dollar which I have willed to my two heirs, above mentioned before, then my executor, Henry C. Knoeppel, shall pay one-half of said excess to his sister Catherine, wife of T. C. Dwyer.

"*Ninth*—I say further. Should my property decrease in value below the amount of sixteen thousand as above mentioned, then my executor shall receive the rent of the real estate, and interest of money or property till he has the same amount as my daughter Catherine, wife of T. C. Dwyer. But taxes and insurance must be paid out of the rent first. Further I will say. In the event of the death of my daughter Catherine before her son Johny Dwyer reach its majority, in that event her husband, T. C. Dwyer, shall become possessed of the above described land will to Catherine Dwyer untill his son Johny Dwyer becomes to his age or majority. Said T. C. Dwyer to have and enjoy the same controle over said land, free from any rent or remuneration whatever except to keep the taxes, insurance and repairs such as necessary on the place paid, until his son Johny Dwyer reaches maturity, then said T. C. Dwyer shall give peasable possession of the property to the heirs of Katherine Dwyer, their guardian or representation."

Under the rule in *Shelley's case* the sixth clause of the will devised a fee simple to Katherine M. Dwyer. The language used has a definite technical meaning, and must be given that meaning unless it clearly appears from the context that the words were not used in that sense. John Knoeppel was survived by two children, Henry C. Knoeppel and Mrs. Dwyer, and Mrs. Dwyer had three children, two boys and a girl, of the respective ages of seven, five and three years when the will was executed, in 1902. The testator had been a county commissioner and sheriff of Scott county. Evidence was introduced to show that he was a German, who came to this country when he was twenty years old, and had received a common school education in Germany before that time; that he lived on a farm in Scott county more than fifty years, was married and had nine children, three of whom died in infancy, and four after reaching maturity died of consumption, and that he wrote his own will; that his daughter's husband,

Thomas C. Dwyer, was unsuccessful in business and not highly regarded by the testator, though the latter was very fond of their children; that Mrs. Dwyer's health has always been bad, and that she and her children have no property for their support other than this land. This evidence was all incompetent and can have no bearing on the construction of the will. The object of construction is to ascertain the intention which the testator has expressed in the language of the will, and not one which he may be supposed to have had in his mind but has not expressed. Evidence of surrounding circumstances cannot be resorted to for the purpose of importing into a will any intention which is not there expressed. (*Karsten* v. *Karsten,* 254 Ill. 480; *Lomax* v. *Lomax,* 218 id. 629.) Where the language is otherwise obscure or doubtful, the circumstances surrounding the testator at the time the instrument was executed may be shown for the purpose of identifying the subjects or objects of the testator's bounty but not for the purpose of changing or modifying the language of the will. There is no latent ambiguity in this will. The language used has a settled legal meaning, and in the construction of it we are limited to the terms of the instrument itself. "Where there is no ambiguity in the terms used, or where the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties, and its construction is not open to oral evidence." (*Fowler* v. *Black,* 136 Ill. 363; *Deemer* v. *Kessinger,* 206 id. 57.) The rule is without exception that where there is nothing in the instrument limiting or qualifying the word "heirs" or giving it a meaning different from its ordinary legal signification it must be regarded as a word of limitation and not of purchase.

It is contended on the part of the appellees that the word "heirs" is used in the will as synonymous with "children." The argument, so far as it is based upon evidence outside the will as to the supposed intention existing in

the testator's mind arising out of the relations of the parties and other considerations, we have seen, cannot be considered. So far as it is based on the will itself, it arises out of the use of the word "heir" in four other places in the will where it is contended that it is used in the sense of "children," and it is contended that it must therefore be given the same meaning in the sixth clause. The term is used in the third clause of the will, in which the testator refers to the payment of any unforeseen expenses and directs them to be borne equally by "the heirs of my estate," and in the fifth clause, in which he expresses trust in the integrity of "my heirs, as hereinafter named," to carry out the provisions of his will. In neither of these cases does the word have the meaning of children. It happens that his children and his heirs are the same persons, but the reference in the will is to the heirs in that relation. His heirs ought to bear the expenses referred to and to carry out the provisions of his will for the reason that they get all of his property, and though he gives it to them by will, so that there is nothing to inherit, they are still his heirs and are properly referred to in these clauses by that designation. In the sixth clause the word "heirs" is again used in referring to the amount which the testator has given his two devisees, and the reference there is not to them as his children but as the distributees of his estate. He has made them heirs of his estate to the extent of $16,000 and now disposes of the excess. In the ninth clause the word "heirs" is used strictly in its technical sense. This clause provides for the death of Mrs. Dwyer before the majority of her son, John. In that event her husband is to have the property until John reaches his majority and is then to turn it over to the heirs of Katherine Dwyer, who may be her children or may not. The word "heirs" may not have been used with strict accuracy every time it was used in this will, but it was not an inappropriate word to use on each occasion when it was used.

The technical words of the sixth clause are presumed to have been used according to their technical meaning. To justify giving them another meaning it must clearly appear from the language of the will itself that they were not used in that sense. The word "heirs" as used in other clauses is not inconsistent with such technical use. The sixth clause should be construed according to the ordinary legal meaning of its language, which conveys a fee simple to Katherine M. Dwyer, subject only to the executory devise contained in the ninth clause. .

The decree is reversed and the cause remanded.

*Reversed and remanded.*