HALLY HAIGHT, JR., Appellant, *vs.* EMMA ROYCE *et al.* Appellees.

*Opinion filed June 22, 1916.*

1. WILLS—*provision that devisee shall pay one-half income to another for life does not create a trust.* Where a will devises land to the nephew of the testatrix in fee simple, a subsequent clause providing that he shall pay one-half of all the rents and profits from the land each year to a certain named person does not create a trust but the devise is still one in fee simple, subject to a rent or income charge enforcible .in a court of equity.

2. SAME—*when precatory words do not create a trust.* Where the testatrix has devised her lands in fee simple to her nephew, with a devise over in fee simple to a named sister of the testatrix in case he dies before either the testatrix or the sister, a subsequent clause reciting that it will be understood by the nephew and the other devisee "that should any of my near relatives become so reduced in circumstances as to need assistance, then it is my wish that they assist such relatives in such ways as my said nephew and sister shall judge to be the best," does not create a trust.

3. SAME—*the direction must be imperative to create a trust.* Whether a trust is created by words of the testatrix indicating her wishes after devising property in fee depends upon whether the direction is imperative, and if the matter is left entirely to the discretion of the donees no trust is created.

4. SAME—*when provision of codicil is not an executory devise of residue to heirs of devisee.* A provision in a codicil devising the residue of the property of the testatrix not otherwise disposed of, to "my nephew, Hally Haight, and to his heirs, in fee simple and forever," is a devise in fee simple to the nephew under the rule in *Shelley's case,* and cannot be held to be a devise to the nephew with an executory devise over to his heirs in case of his death occurring before that of the testatrix.

5. SAME—*when all devises and bequests lapse and the property becomes intestate estate.* If all the devisees and legatees named in the will are given estates in fee simple and none of them are children or grandchildren of the testatrix, the death of all such devisees and legatees before the death of the testatrix effects a lapse of the devises and bequests and the property descends as intestate estate, there being no provision in the will making any disposition of the property in such contingency.

APPEAL from the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

CHILDS & CHILDS, for appellant.

FISCHER & FISCHER, for appellee Elvira Haight; WIL-
LIAM S. HEFFERAN, and S. L. RATHJE, for appellee El-
len Crosman; J. C. MURPHY, and E. L. LYON, for appellee
Albert Page.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the
court:

Appellant, Hally Haight, Jr., by his next friend, filed
his bill in the circuit court of DuPage county, praying that
the will of Adela Hobson be construed as to the rights of
all parties in interest, and especially that his rights be de-
termined and fixed.

The last will and testament of Adela Hobson consisted
of a will made June 5, 1885, and a codicil thereto dated Sep-
tember 10, 1894. The will, omitting the attesting clause,
is as follows:

"I, Adela Hobson, of the village of Naperville, DuPage county,
being of the age of thirty-nine years, do hereby make and declare
this to be my last will and testament, as follows:

"*First*—I direct that my funeral expenses and all my just debts
be paid.

"*Second*—I give and devise to my nephew, Hally Haight, in fee
simple, the land which was set off to me at the division of my
father's estate, and which consists of thirty-five acres of prairie
land and ten acres of cleared land, marked as lots No. 5 and 6 on
the map attached to the report of the commissioners who divided
the estate of Baley Hobson.

"*Third*—I also give and devise to my nephew, Hally Haight, in
fee simple, all my title and interest in the homestead property for-
merly held by my mother as her dower in the estate of my de-
ceased father, consisting of one share in the said homestead prop-
erty inherited by me and one share purchased by me from the heirs
of my deceased brother, Merritt S. Hobson.

"*Fourth*—I give and devise to my nephew, Hally Haight, in fee
simple, my house and lots on Washington street, in the village of
Naperville, DuPage county, Illinois.

"*Fifth*—I also give, devise and bequeath to my nephew, Hally
Haight, all the other property, including household furniture, notes,

accounts, cash or real estate not before mentioned in this my will, which I may own at the time of my death.

"*Sixth*—The above mentioned legacies to my nephew, Hally Haight, are, however, left to him on this condition: that he pay, at the end of each year, to my sister, Charlotte, wife of David M. Haight, of Oswego, Kendall county, Illinois, during her lifetime and for her use and benefit, one-half of the rents and profits annually derived by him from the properties devised and bequeathed to him as above.

"*Seventh*—If my nephew, Hally Haight, shall die before either myself or my sister, Charlotte Haight, then it is my will that my sister, Charlotte Haight, shall take in fee simple and as her absolute property all the lands and properties given and devised in the above legacies to my nephew, Hally Haight.

"*Eighth*—I hereby appoint my nephew, Hally Haight, executor of this my last will and testament, and give him full control and authority over everything belonging to my estate the same as I myself had during my lifetime. And if my nephew, Hally Haight, shall die before either myself or my sister, Charlotte Haight, then my sister, Charlotte Haight, shall be executor of this my last will and testament, with the same control and authority over everything belonging to my estate which I myself had during my lifetime.

"*Ninth*—It will be understood by my nephew, Hally Haight, and my sister, Charlotte Haight, that should any of my near relatives become so reduced in circumstances as to need assistance, then it is my wish that they assist such relatives in such ways as my said nephew and sister shall judge to be the best.

"*Tenth*—I hereby revoke all former wills and testaments made by me.

"In witness of all which I have hereunto set my hands and seal this fifth day of June, A. D. 1885.

ADELA HOBSON. (Seal.)"

The codicil is in the following words and figures:

"I, Adela Hobson, of the city of Naperville, DuPage county, Illinois, of the age of forty-eight years, and being of sound mind and memory, do hereby make, publish and declare this my codicil to my will executed by me on the fifth day of June, A. D. 1885, hereby making this codicil a part of my said will, as follows:

"*First*—I hereby re-affirm and re-declare my said will in every particular except as the same is modified by this my codicil.

"*Second*—I hereby give and bequeath to my niece, Elizabeth Haight, the sum of $300, lawful money of the United States, to be paid to her by my executor within six months after my death.

"*Third*—I hereby give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, which is not

otherwise disposed of in my said will and in this codicil, to my nephew, Hally Haight, and to his heirs, in fee simple and forever.

"In witness of all which I, the said Adela Hobson, have hereto set my hand and seal the tenth day of September, A. D. 1894.

ADELA HOBSON. (Seal.)"

The defendants to the bill were the heirs-at-law of the testatrix and the administrator of her estate *cum testamento annexo,* and certain of them (appellees here) answered, denying that appellant, Hally Haight, Jr., had any rights in the estate of said Adela Hobson; averring that the devises, bequests and legacies of said will had all lapsed because of the death of all the legatees and devisees prior to the death of Adela Hobson and that the property should descend as intestate estate to the heirs-at-law, and asking that a decree be entered in their favor. The other defendants were defaulted. Replications were filed to the answers and the case was heard upon the issues as joined.

It appears that Adela Hobson died November 19, 1912, leaving said will and codicil, which were probated. She was never married, had no children, and left her surviving as her only heirs and next of kin, two sisters and the descendants of certain deceased brothers and sisters. Hally Haight named in said will died testate May 3, 1911, and his will was duly probated. He left him surviving a son, Hally Haight, Jr., the appellant. Charlotte Haight named in the will died February 4, 1911. Elizabeth Haight, also named in the will, died June 21, 1904.

The court by its decree found, in accordance with the foregoing facts, that "all of the legatees and devisees mentioned by name in the will of Adela Hobson, deceased, died prior to the death of said Adela Hobson, and that the said Adela Hobson did not leave any child or children or descendants of any child or children her surviving, and that the said last will and testament, and codicil thereto, of the said Adela Hobson, deceased, made no provision for the distribution of the property of said testatrix in the event of the death of any or all of said legatees or devisees." The

court decreed that said will and codicil were inoperative to pass any right, title, interest or estate in the property of Adela Hobson; that because of the death of all the devisees and legatees prior to her death, all devises and bequests contained in said will and the codicil thereto lapsed and nothing passed under the residuary clause; that all of the property of Adela Hobson descends to her heirs-at-law under the laws of descent, and none of her property can be construed to have passed under the will and codicil and that none did so pass. The court also decreed the payment of $500 from the estate as complainant's solicitor's fees, and made the same a lien upon the real estate of said estate. The complainant prayed and was allowed an appeal, and has assigned as error that the decree does not construe the will in accordance with the law; that the decree erroneously found that all of the legacies and devises provided for in the will of Adela Hobson lapsed and her estate descended to her heirs-at-law as intestate estate; that the court should have held that the will passed the title to the real and personal property of the testatrix to Hally Haight, Jr., by executory devise, and the decree should have so found. Appellee Elvira Haight has assigned cross-errors as to the finding of the court that a construction of the will was necessary, and to the allowance of a solicitor's fee to be paid from the estate and making the same a lien upon the real estate of the estate.

It is contended by appellant that the devise of the property by the testatrix to her nephew, Hally Haight, in the second, third, fourth and fifth clauses of the original will and the third clause of the codicil would not have the effect of vesting in him an indefeasible estate in fee simple in said property but a base or determinable fee; that by the sixth and ninth clauses of the will trusts were created, the effect of which was that Hally Haight could not alienate any portion of the property devised or bequeathed to him during the lifetime of Charlotte Haight, and that he took not only

a base or determinable fee, but also a conditional fee conditioned upon the carrying out of the alleged trusts. It is also contended that by the third paragraph of the codicil there is shown the intention of the testatrix, by the use of the words "to my nephew, Hally Haight, and to his heirs, in fee simple and forever," to designate a class who should take her estate in case of the death of both Charlotte and Hally; that the words "and to his heirs" are in the nature of an executory devise to appellant, Hally Haight, Jr., who stands as the representative of the class designated as heirs.

To arrive at the proper construction of the will it is necessary to consider all of its parts somewhat in detail. The devises to Hally Haight under the second, third, fourth and fifth clauses of the will, if the testatrix had stopped there, are clearly devises in fee simple. The words "in fee simple" are used by the testatrix in the second, third and fourth clauses to denote the character of the estate devised, and even if they had not been used Hally Haight would have taken under such clauses a devise of a fee simple estate of inheritance under section 13 of the Conveyance act. (Hurd's Stat. 1913, p. 531.) It is true that the sixth clause imposes a condition upon the property so devised and bequeathed, to the effect that the devisee shall pay to Charlotte Haight, a sister of the testatrix, one-half of the rents and profits annually derived from the property so devised and bequeathed to him. A trust is not created by the sixth clause. The devise is still to Hally Haight in fee simple but subject to a rent or income charge, which Charlotte Haight, the beneficiary, could enforce in a court of equity and compel the payment of the amount of such charge to her in money. (*Gallagher* v. *Herbert*, 117 Ill. 160.) If Hally Haight and Charlotte had both survived the testatrix, the property described in the first four clauses of the will would vest in Hally Haight on the death of the testatrix, subject to the right of Charlotte Haight to compel the payment to her of one-half the rents or income

from said property, as provided by the sixth clause, in case Hally Haight, as such devisee, failed to voluntarily make such payment. A devise of land on the condition that the devisee pay other children of the testatrix certain sums of money vests the title in such land in the devisee. (*Spangler* v. *Newman,* 239 Ill. 616, and cases cited.) If Hally Haight had survived the testatrix and had taken under the will and had made such payments and voluntarily carried out the conditions named, or if he had been compelled by legal proceedings to carry them out, then the fee simple title that was vested in him would never be divested even though it were cut down to a base or determinable fee by reason of the seventh clause of the will, which is good as an executory devise. (*Smith* v. *Kimbell,* 153 Ill. 368; *Strain* v. *Sweeny,* 163 id. 603.) Nor does the ninth clause have the effect of creating a trust. It is true that no particular form of words is necessary to create a trust, but as said in *Randall* v. *Randall,* 135 Ill. 398, on page 400 of the opinion: "No trust can be implied merely from the words indicating the motives which induced the gift. (*Bryan* v. *Howland,* 98 Ill. 630; *Giles* v. *Anslow,* 128 id. 196; Perry on Trusts, sec. 119.) And the rule is, wherever the prior disposition of the property imports absolute and uncontrolled ownership, and also wherever a clear discretion and choice to act or not to act is given, equity will not construe a trust from the language employed.—2 Story's Eq. sec. 1070; Hill on Trustees, (4th Am. ed.) 119, *74; *Mills* v. *Newberry,* 112 Ill. 135." It will be noted that the beneficiaries of the alleged trust are not named and are uncertain, and also that a discretion is given to the alleged trustees, Hally and Charlotte Haight, to determine whether or not, and to whom, assistance is to be given, and also to what extent. Precatory words do not always or necessarily create a trust. The question is one of intention, and the real question is whether the direction is imperative, and if the matter is left to the decision of the donee such words would not create a trust.

As to the legal effect of the language used in the third clause of the codicil, we have been referred to no case, and are aware of none arising in a State whose system of laws is based upon the common law, in which similar words have been given the effect of an executory devise. On the contrary, in *Deemer* v. *Kessinger,* 206 Ill. 57, a devise of land to the son of the testator and to his lawful heirs was held to be a devise in fee under the rule in *Shelley's case.* This was also the holding in *Silva* v. *Hopkinson,* 158 Ill. 386, *Winter* v. *Dibble,* 251 id. 200, *Crabtree* v. *Dwyer,* 257 id. 101, and *Rissman* v. *Wierth,* 220 id. 181. The fifth clause of the original will is in the nature of a residuary clause. The third clause of the codicil is also a residuary clause. It is conceded by counsel for the appellant that under the second, third, fourth and fifth clauses of the original will, standing alone and without the rest of the will, Hally Haight, the nephew of the testatrix, would take an estate in fee simple in the property mentioned and that such devises would lapse if he died prior to the testatrix. The language used in the third clause of the codicil brings the devise made in that clause squarely within the rule in *Shelley's case.* Such words have a definite and unchangeable meaning in law, which must control even if it be against the testator's manifest intention. (*Lord* v. *Comstock,* 240 Ill. 492; *Ward* v. *Butler,* 239 id. 462.) We do not think there is to be gathered from this clause, or from any part of the will, any intention of the testatrix, as contended by appellant, to devise the property to the children or heirs-at-law of Hally Haight if he should not be living at the testatrix's death. The language in clause 7 is exactly contrary to such intention, and there is no reason why the language used by the testatrix in clause 3 should not be taken in its generally accepted legal sense and meaning. The word "heirs" will be presumed to have been used with knowledge of its meaning. (*Fowler* v. *Black,* 136 Ill. 363.) In the case of *Rissman* v. *Wierth, supra,* the language of the will

was as follows: "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to my beloved wife, Sibila Barbara Rupprecht, to hold and to have to her, my said wife, and to her heirs and assigns forever." The words "and to" were used in the same manner as in the third clause of the codicil of the will in question. The court held that the rule in *Shelley's case* applied and on page 185 of the opinion said: "The word 'heirs' being used in the general legal sense, is, under the rule, one of limitation, and no intention of the testator, however clearly expressed, can change it into a word of purchase." The reason for the rule and its application are very aptly explained in the case of *Winter* v. *Dibble, supra,* in which it is said, on page 221 of the opinion: "The ordinary form of a conveyance of a fee at common law was to the grantee and his heirs. A conveyance to the grantee alone gave a life estate, only. The added words, 'and his heirs,' indicated a fee simple. The word 'heirs' was not used to describe the persons who were to take the estate after the grantee's death but the quality of the estate granted, which was a fee. The estate granted was not different if given to the grantee for life with remainder to his heirs. The addition to the ordinary formula for granting a fee, of the words 'for life,' was regarded merely as an effort to restrict the grantee's enjoyment of the fee granted to him by restraining his power of alienation, and the law would not permit this to be done. The word 'heirs' had therefore, long before *Shelley's case* arose, been regarded as a word descriptive of the estate and not of the person, and the rule called by Shelley's name was merely the announcement of a legal principle which had then been applied by the courts for more than two hundred years. The rule as stated by Coke (vol. 1, 104*a*,) is, that 'when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, that al-

ways in such cases 'the heirs' are words of limitation of the estate and not words of purchase.' This is a rule of law and not of construction, and the use of the word 'heirs,' unless it clearly appears from the instrument to have been used in a sense different from its strict legal meaning, is conclusive of the intention."

It follows that the devise to Hally Haight, so far as the third clause of the codicil is concerned, was a devise of the residuum in fee simple, and whatever estate he would have taken under the will had he survived the testatrix, whether a base fee or a fee simple absolute, he having died prior to the death of the testatrix and not being a child or grandchild of the testatrix, (in which cases an exception is made by section 11 of the chapter on descent,) the devises to him lapsed and passed to the heirs-at-law of the testatrix as intestate estate. This is also true of the devises to Charlotte Haight and Elizabeth Haight. *Dorsey* v. *Dodson,* 203 Ill. 32; *Magnuson* v. *Magnuson,* 197 id. 496; *Schumaker* v. *Grammer,* 200 id. 48.

We do not deem it necessary to consider all of the arguments advanced in support of the contentions of the various parties as to the construction and meaning of the will in question. We think that no trust was created by either the sixth or ninth clause of the original will. We are also of the opinion that by the second, third, fourth and fifth clauses of the original will Hally Haight was devised an estate in fee simple, subject to the executory devise to Charlotte Haight in case he survived the testatrix and took under the will but died before Charlotte Haight, as provided in the seventh clause of the will. By reason of the executory devise his estate was reduced to a base or determinable fee, which estate he would have taken had both he and Charlotte Haight survived the testatrix, and which estate would have determined in case of his death after the death of the testatrix but before the death of Charlotte Haight. The devise to him was also subject to the charge in the

sixth clause of the will that he pay one-half of the income to Charlotte Haight during her lifetime. But it is not necessary to consider these provisions further as both he and Charlotte Haight died before the testatrix, and consequently neither of them took anything under the will or could take.

On the question of solicitors' fees, the general rule is that when the testator has expressed his intention so ambiguously as to make it necessary or advisable to go into a court of chancery to obtain a construction of the will in order to determine which of two or more adverse claims to the same fund or property is valid, the costs of litigation should be borne by the fund or property in question. (*Ingraham* v. *Ingraham,* 169 Ill. 432; *Kendall* v. *Taylor,* 245 id. 617.) The allowance of solicitors' fees in such cases is largely within the discretion of the chancellor. The court found that the construction of the will and codicil was essential to the proper settlement of the estate of the testatrix. While attorneys' fees should not be charged against the entire estate in every case, as, for instance, in the case of a bill to construe a will the provisions of which are so plain that there could be no question of its meaning, we are not prepared to say in this case that the bill was wholly unnecessary and was filed for fanciful reasons or that the court committed error in holding that a construction of the will was necessary. There was a question as to whether trusts were involved and a question as to the ultimate disposition of the property, and these questions arose on account of the language used by the testatrix as well as because of the deaths of the respective beneficiaries named. As will be seen from the cases cited,—and there are many others,—similar questions have been deemed worthy of consideration by this court, and for many reasons no two cases which involve the construction of wills are alike.

Perceiving no error sufficient to justify a reversal, the decree of the circuit court will be affirmed.

*Decree affirmed.*