(No. 14190.—Decree affirmed.)

JOSEPH B. POOL, vs. MARY A. POOL, et al.—(EDGAR POOL, et al. Appellants, vs. SARAH POOL, et al. Appellees.)

*Opinion filed December 22, 1921.*

1. WILLS—*intention to be given effect is that expressed in the will.* The intention of the testator which is to be given effect when not contrary to law or public policy, is that intention which the testator has expressed by the language used in the will and not an intention he may have had in his mind but did not express.

2. SAME—*when surrounding circumstances may be shown in construing will.* Surrounding circumstances may be shown to explain a latent ambiguity or to explain language which is of obscure or doubtful meaning, but this cannot be done for the purpose of changing or modifying the language of the will nor to supply omissions or deficiencies.

3. SAME—*when word "heirs" is used as a word of limitation—Shelley's case.* Where a devise is made to a person and his heirs or his heirs and assigns the word "heirs" is a word of limitation unless superadded words make it a word of purchase, and the fee vests in the grantee by virtue of the common law rule, under which the word "heirs" denoted the quality of the estate granted, and not by virtue of the rule in *Shelley's case.*

4. SAME—*the word "heirs" is presumed to be used in technical sense.* While the word "heirs" is frequently used in other than its technical sense to designate a more restricted class than heirs generally, the word is presumed to be used according to its technical meaning, and will be given that meaning unless it clearly appears that it is not so used.

5. SAME—*when devise lapses and does not go to heirs of devisee.* A devise to a person and "to his heirs and assigns forever" is a devise of the fee, and on the death of the devisee prior to that of the testator the children of the devisee will not be substituted for the devisee but the devise will lapse, where there is nothing in the will to indicate that the words were not intended to be used in their strict legal sense.

6. SAME—*when widow is not entitled to one-half the land covered by lapsed devise.* A widow who renounces the will and elects to take one-half of the real and personal estate under section 12 of the Dower act, is not entitled, in addition, to one-half of the other half of the real property, all of which was devised in fee to the testator's brother, who died before the testator and whose devise therefore lapsed. (*Sutton* v. *Read,* 176 Ill. 69, distinguished.)

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

WOODWARD, HIBBS & POOL, for appellants.

BUTTERS & CLARK, and HANSON & JACOBSON, for appellees.

ARLEY MUNTS, for Mary A. Pool.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a decree in a suit for the partition of lands owned by John Pool in his lifetime, and involves the construction of his will and the determination of the rights of his widow and heirs-at-law.

John Pool died testate in June, 1919. He left a widow, Mary A. Pool, but no child or children or descendants of a child or children. His will was executed November, 1908, and is as follows:

"*First*—I desire all of my just debts and funeral expenses paid.

"*Second*—I empower my executor hereinafter named to cause to be erected a monument for myself and wife, not to exceed the sum of five hundred ($500) dollars.

"*Third*—I give, devise and bequeath to my brother, Henry Pool, in trust for my wife during her lifetime, all of my real and personal estate, or so much thereof as may be necessary for her care, support, etc.,—that is, the income from said real and personal estate.

"*Fourth*—After the death of my wife, Mary A. Pool, I give and bequeath to Elsie R. Miller, daughter of J. B. Pool, five hundred dollars, and to her heirs and assigns forever. To Grace M. Pool, daughter of George A. Pool, the sum of five hundred dollars, provided she is living at the time of the death of my said wife.

"*Fifth*—After the death of my said wife aforesaid, and the payment of the above legacies, together with her funeral

expenses, I give, devise and bequeath all the rest, residue and remainder of my real and personal estate to my brother, Henry Pool, and to his heirs and assigns forever.

"*Sixth*—I hereby nominate and appoint my brother, Henry Pool, executor of this my last will and testament, and request the court not to require any security on his official bond."

The widow in apt time renounced the will and filed her election, under sectic 1 12 of the Dower act, to take one-half the real and pe: sonal estate. The testator's brother, Henry Pool, and his niece, Elsie R. Miller, mentioned in the will, both died before the death of the testator. At the time the will was made Henry had three living children and Elsie had one, which was known to the testator. Henry died more than a year and Elsie more than five months before the death of the testator, who retained his mental and physical faculties to the time of his death. In addition to his widow the testator left surviving as his next of kin, Joseph B. and George A. Pool, his brothers, Margaret Lewis, his sister, and several nephews and nieces, children of deceased brothers and sisters. The bill was filed by Joseph B. Pool, and alleged the devise in paragraph 5 to Henry Pool never vested and that the devise and legacy to him lapsed and the estate and property embraced in it became intestate estate, all of which, except the portion to which the widow was entitled, descended to the testator's next of kin. The three children of Henry Pool,—Edgar, Frank and George,—answered, claiming the words "and to his heirs and assigns forever," in paragraph 5, are substitutional in character, and that they, as the children and only heirs-at-law of Henry Pool, took the property in his stead, and that there was therefore no lapse. The widow answered, claiming she was entitled to the undivided three-fourths of all the real estate of which her husband died seized, and to dower in the other one-fourth. The court entered a decree that the devise under paragraph 5 had

lapsed and that the children of Henry Pool took nothing under the will. The decree found the widow was entitled to homestead and to an undivided one-half of the real estate but no other interest therein in fee or for life. The three children of Henry Pool have prosecuted this appeal.

Appellants contend that, applying the cardinal rule in will construction that the intention of the testator will be given effect unless contrary to an established rule of law, and that in determining the intention the whole will must be considered and read in the light of the facts and circumstances surrounding the testator, his family and property at the time the will was made, it sufficiently appears that it was the intention of the testator at the time he made his will to substitute Henry Pool's children for him in the event of his death before the death of the widow. It is admitted if paragraph 5 is considered alone the legacy and devise lapsed, but it is contended when the whole will is considered, and also the facts and circumstances surrounding the testator, his family and property at the time he made his will, it will appear he used the words in the fifth paragraph referred to, in a substitutional sense. The only part of the will referred to as throwing any light on the question is paragraph 4. By that paragraph the testator gave, after the death of his wife, a legacy of $500 to his niece Elsie R. Miller, "and to her heirs and assigns forever." In the same paragraph he gave his niece Grace M. Pool $500, "provided she is living at the death of my said wife." It is argued that the testator clearly intended if Grace was not living at the time fixed for distribution,—the death of his wife,—no one should take in her stead but in that event the legacy should lapse, and if that had been the intention as to the legacy to Elsie the same or similar language would have been used. It is said the testator knew Elsie was married and had a child; that he knew Grace was twenty-seven years old and unmarried, and there was a reason in Elsie's case when the will was made for

providing someone to take in her stead if she died before the widow's death and no such reason then existed in favor of Grace. On the assumption that the words in the bequest to Elsie, "and to her heirs and assigns forever," must be held to be substitutional, counsel say like words in the fifth paragraph must also be held to be substitutional unless a contrary intention appears from the context. (*Abrahams* v. *Sanders*, 274 Ill. 452.) As the construction of paragraph 4, which is a bequest of money, only, is not involved except in so far as it may throw light on paragraph 5, we shall not undertake to construe that provision but will consider paragraph 5, the construction of which is the principal question for determination.

Appellants contend that the rule in *Shelley's case* can have no application to paragraph 5, and therefore that rule cannot be invoked to defeat the testator's intention. While it is a fundamental rule of will construction that the intention of the testator, when not contrary to law or public policy, is to be given effect, it is also fundamental that the intention which will be given effect is the intention which the testator has expressed by the language used in his will, and not the intention it may be supposed he had in his mind but did not express in his will. Where the language is obscure or doubtful, circumstances surrounding the testator at the time he made his will may be shown, but this cannot be done for the purpose of changing or modifying the language of the will. (*Crabtree* v. *Dwyer*, 257 Ill. 101.) Surrounding circumstances may be shown to explain a latent ambiguity which is not found on the face of the instrument itself, but not to supply omissions or deficiencies. (*Karsten* v. *Karsten*, 254 Ill. 480.) "Where there is no ambiguity in the terms used, or where the language of the instrument has a settled legal meaning, the instrument itself is the only criterion of the intention of the parties, and its construction is not open to oral evidence." (*Fowler* v. *Black*, 136 Ill. 363; *Deemer* v. *Kessinger*, 206 id. 57.)

300—36

Where a devise is made to a person and his heirs or his heirs and assigns, the word "heirs" is a word of limitation unless superadded words make it a word of purchase. (*Crabtree* v. *Dwyer, supra; Carpenter* v. *VanOlinder,* 127 Ill. 42.) While the word "heirs" is frequently used in other than its technical sense to designate a more restricted class than heirs generally, "technical words are presumed to be used according to their technical meaning, and will be given that meaning unless it clearly appears that they were not used in that sense." *Winter* v. *Dibble,* 251 Ill. 200.

The usual form of creating a grant or devise of a fee at common law was by giving the property to the grantee or devisee and his heirs. In such case the word "heirs" is a word of limitation and the fee vests in the grantee or devisee. (*Wolfer* v. *Hemmer,* 144 Ill. 554; *Dunn* v. *Kearney,* 288 id. 49; *Lambe* v. *Drayton,* 182 id. 110; *Morton* v. *Babb,* 251 id. 488; *Johnson* v. *Buck,* 220 id. 226.) This is not because of the rule in *Shelley's case,* for the common law rule of what words created a fee existed long before *Shelley's case* arose. That case arose out of an attempt to defeat the common law rule by making the gift or grant of a freehold estate to the ancestor with a limitation by way of remainder to his heirs. This was clearly explained in *Winter* v. *Dibble, supra,* where the court said: "The ordinary form of a conveyance of a fee at common law was to the grantee and his heirs. A conveyance to the grantee alone gave a life estate, only. The added words, 'and his heirs,' indicated a fee simple. The word 'heirs' was not used to describe the persons who were to take the estate after the grantee's death but the quality of the estate granted, which was a fee. The estate granted was not different if given to the grantee for life with remainder to his heirs. The addition to the ordinary formula for granting a fee, of the words 'for life,' was regarded merely as an effort to restrict the grantee's enjoyment of the fee granted to him by restraining his power of alienation, and

the law would not permit this to be done. The word 'heirs' had, therefore, long before *Shelley's case* arose, been regarded as a word descriptive of the estate and not of the person, and the rule called by Shelley's name was merely the announcement of a legal principle which had then been applied by the courts for more than two hundred years."

In a few cases it was inadvertently said the rule in *Shelley's case* applied to a grant or devise to one and his heirs, but that did not affect the correctness of the decisions. (*Johnson* v. *Buck, supra; Morton* v. *Babb, supra.*) The decision as to the meaning of paragraph 5 therefore depends on whether the testator, in the use of the words "his heirs and assigns forever," used them in their primary or technical sense, meaning all those entitled to take by descent from Henry Pool, or whether the words were used in a restricted sense, to designate his children. It is undeniable that if they were used in the former sense the devise was of a fee, and on the death of Henry Pool before the testator's death the legacy lapsed. (*Haight* v. *Royce,* 274 Ill. 162; *Rissman* v. *Wierth,* 220 id. 181; *Ewing* v. *Barnes,* 156 id. 61; *Silva* v. *Hopkinson,* 158 id. 386; *Dunn* v. *Kearney, supra.*) The only method by which such a devise as made by paragraph 5 can be shown not to have the effect of creating a fee in the devisee is to show that the words were not used in their strictly legal sense. (*Carpenter* v. *VanOlinder, supra; Silva* v. *Hopkinson, supra; Crabtree* v. *Dwyer, supra.*) As we have said, appellants concede paragraph 5, if considered alone, must be held to have devised a fee to Henry Pool, but it is claimed it appears from the use of the same language in paragraph 4 the testator intended to substitute the children of the devisee in case the devisee died before the devise vested in possession. Under all the authorities in this State, before we would be authorized to construe paragraph 5 to mean something different from what its language imports it must clearly appear that the language was used in a different sense. We

find no warrant in the will to give paragraph 5 any other construction than its strict legal meaning.

The widow has assigned cross-errors on that part of the decree giving her a half interest in the fee. She claims she is entitled to the undivided one-half and the undivided one-half of the other half, and, in addition to other cases cited, counsel places much reliance on *Sutton* v. *Read*, 176 Ill. 69. We do not regard that case as applicable. In that case the testator did not dispose of the fee of his real estate by will and there was no renunciation of the will by the widow.

We are of opinion the decree of the circuit court is correct, and it is affirmed.    *Decree affirmed.*