REGAN *v.* COLEMAN.

[69 South. 291.]

ADVERSE POSSESSION. *Evidence. Sufficiency.*

Where the grantor executed an instrument intending thereby to
vest title in the grantee to certain lands and such grantees en-
tered into the possession of such lands, and so remained for
more than ten years, openly and notoriously, claiming the ex-
clusive ownership thereof under said instrument, this title be-
came perfect by adverse possession, whether such instrument
would be construed as a will or a deed.

APPEAL from the chancery court of Marion county.
HON. R. E. SHEEHY, Chancellor.

Suit by R. Regan against Fannie Coleman. From a decree dismissing the bill, complainant appeals.

In 1895 R. R. Herring, now deceased, was the owner of numerous lands in Marion county. On the 5th day of April, 1895, while on his deathbed, R. R. Herring executed the instrument set out below, and died soon after:

"State of Mississippi, County of Marion.

"I, R. R. Herring make and declare this to be my last will. I give devise and bequeath my whole estate that is to say, my land to my wife Ellen E. Herring and to my four youngest boys, Ulyses Herring, and Charlie Herring, the west half of southeast quarter and east half of southeast quarter of section 9, Township 1, Range 12 east; and to my other following named sons, Marcus L. Herring and Casabianca Herring and Adolphus Herring, the south half of northeast quarter of section 9 township 1 north, range 12 east, and the west half of southwest quarter and southeast quarter of southwest quarter and southeast quarter of northwest quarter of section 10 township 1, and northeast quarter of northeast quarter section 16, township 1 north, range 12 east, and the southeast quarter of northeast quarter section 15, township 1 north, range 12 east.

"I appoint Joseph L. Herring and R. R. Herring Jr. executor of this my will.

"In witness whereof in Marion county, Mississippi, having written all this last will by an officer now this the 5th day of April A. D. 1895.

"REUBEN R. $\overset{\text{his}}{\text{X}}$ HERRING.
$\text{mark}$

"State of Mississippi, Marion County.

"Personally appeared before me the undersigned member of the board of supervisors in and for said county, the within-named Reuben R. Herring, who acknowledged that he signed and delivered the foregoing will on the day and year therein mentioned.

"Given under my hand and seal of office this the 5th day of April A. D. 1895.

"C. E. PIGOTT, M. B. S.

"Filed for record June 29, 1895, 11 o'clock a. m., and duly recorded July 2, A. D. 1895.

"C. G. MAYSON, Clerk,

"By J. T. BENNETT, D. C."

Shortly after the death of R. R. Herring, to wit, on June 29, 1895, this instruction was recorded in the office of the chancery clerk, and the dead man's widow, Ellen E. Herring, and his sons Ulyses and Charlie Herring, entered upon and took possession of the land described as the northeast quarter of the southeast quarter of section 9, Township 1 north, Range 12 east, that being a portion of the land set apart for them in the above instrument. About fifteen years thereafter, to wit, in 1910, E. E., Ulyses, and Charlie Herring conveyed this land to R. Regan, the appellant, and in 1911 Regan filed his bill against Fannie Cochran, who, he alleged, was claiming an undivided interest in this land, as an heir of R. R. Herring, and prayed that Fannie Cochran's claim be canceled as a cloud on his title.

The lower court decreed, among other things, that Regan, the complainant, was not entitled to the relief prayed for, and dismissed his bill. From this decree Regan appealed to the supreme court.

*Henry Mounger* and *Harvey McGeehee,* for appellant.

The validity of the title acquired by the appellant to the whole of the lands in controversy is dependent first upon the construction to be placed upon the instrument of writing executed by R. R. Herring on the 5th day of April, 1895, whereby he undertook to convey or dispose of said lands to his wife, Mrs. E. E. Herring, and two sons, Ulyses and Charlie Herring, who afterwards conveyed the same to the appellant in fee simple; and secondly in the event that said instrument is construed

to be a will and ineffective and void as such, for the reason that the same was never attested and probated, his right then to the relief prayed for, must depend on the question as to whether he and his grantors have been in possession of, and have held said lands adversely to the appellee, for a sufficient length of time to complete the bar of the statute of limitations.

The determination of the legal character and effect of an instrument of writing as to whether it be a deed or a will, depends mainly upon the question whether the maker intended to convey an estate · in *praesenti,* and whatever may be the form of the instrument, if, upon the whole, the intention was, that all the title and interest in the property should pass immediately, and no right of revocation was intended to be reserved, it is well settled that it is a deed, and in such case it is immaterial whether the maker calls it a deed or a will. See 30 Miss 91, and authorities there cited; see, also, the case of. *Brinson* v. *Sandifer,* 90 Miss. 43.

And it has been held that a paper that cannot operate as a will, is to be given effect as a deed, if it can be fairly done. 30 Am. & Eng. of Law, page 577.

And the contention that we desire to make in this brief on that question, is that regardless of whether the' instrument referred to, be construed to be a will or deed, the fact remains that the heirs of R. R. Herring interpreted the same as a deed, it was recorded as such, and Mrs. E. E. Herring and her two sons, Ulyses, and Charlie Herring, to whom this land was conveyed, and also three of the other heirs of R. R. Herring to whom lands were conveyed in said instrument, have acted upon it as being a deed, for more than fifteen years, each of them having taken possession and absolute control of their respective portion at the time of its execution, and all of the other heirs of R. R. Herring, including the appellee, who were not mentioned in the conveyance, have never questioned its validity, and have never

claimed, neither do they now claim any interest whatever in any part of the land embraced therein, except that within the last two years, the appellee at the will and suggestion of Cochran, her second husband, is claiming an interest in the forty acres which was sold to the appellant, notwithstanding that she has stood idly by and allowed parcel after parcel of the lands mentioned in this instrument, to be sold to different persons without making any complaint, or asserting any right to any interest in the parcels of land that have been disposed of, which shows that she and the other heirs of the said R. R. Herring have acted upon and regarded this instrument as being a deed of conveyance, and since it is true that the grantors of the appellant have exercised all acts of ownership and control over this land have claimed it as their own for these many years, and it was generally regarded in the community as being their land, and the appellee has permitted, without complaint, a sale of portions of this estate and that appellant has relied upon the conduct of all the heirs of R. R. Herring in recognizing and acquiescing in the claim of ownership of his grantors, she should not now be heard to question the validity of the instrument that they have acted upon in good faith since the date of its execution.

In regard to the question of adverse possession, we submit that the proof clearly sustains the contention of the appellant to the effect that he and his grantors, the said Mrs. E. E. Herring, Ulyses Herring and Charlie Herring, have been in the actual possession of the lands in controversy and have continuously cultivated and exercised all acts of ownership over the same and that their claim to said lands have been open, notorious, hostile and adverse to the appellee and the other heirs of R. R. Herring, deceased, for a period of more than ten years.

In this connection we find that the rule is laid down in 1 Cyc. at page 1075, as follows: ''Sole and exclusive

possession by one tenant in common for a great number of years, and reception of rents, and profits, without any accounting to, or recognition of right of the cotenants, and without any claim made by them, will, if unexplained or controlled by any evidence showing the reason for the negligence or omission of the cotenants to assert their rights, furnish evidence which will authorize a finding of ouster and adverse possession.''

Volume 1, of Cyc., at page 1074: There can be such open and notorious acts of ownership or such an assertion of the claim to the exclusive possession of the whole land, as in law will impart notice to cotenants of an adverse and exclusive claim of title. See 90 Am. Decs. 443; 1 Am. & Eng. Ency. of Law, page 833; *Greenhill* v. *Biggs,* 7 Am. St. Rep. 579; *Alexander* v. *Kennedy,* 70 Am. Dec. 358; *Law* v. *Patterson,* 1 Watts. 184.

While it is true that mere acts of ownership by one tenant does not amount to diverse possession, yet the rule in substance is stated in Cyc. at page 1075, that whether there be such possession depends upon the intent with which the acts of ownership are performed and upon their notoriety as affording evidence of notice of the adverse character of the possession, and this view that actual notice is unnecessary in order to affect an ouster of a cotenant, is clearly sustained with great clearness of reasoning, in many authorities because it accords with ordinary experiences that property-owners usually manifest some regard for their property rights. See *Farrow's Heirs* v. *Edmondson,* 41 Am. Dec. 250; *Lodge* v. *Patterson,* 27 Am. Dec. 335; *Cye* v. *Andrews,* 11 Texas, 170; *Warfield* v. *Lindell,* 90 Am. Dec. 451; *Thomas* v. *Garwin,* 25 Am. Dec. 709.

So it seems that the notion once entertained in regard to what was necessary to constitute an actual ouster by a tenant in common, has given away even where the tenant in common enters land recognizing the right and title of his cotenants, and we submit that in the

case at bar where the entry was manifestly made not as tenants in common, the appellee, but clearly under a claim in their own right, it was certainly not required that they should have given to the appellee written or verbal notice of their claim, in order to acquire title by adverse possession, and in this connection we call the court's attention especially to the case of *Gillespie* v. *Osborn,* 13 Am. Dec. ——.

It is said in the first volume of Cyc., at page 1076, in the foot-note, that: "Possession by one cotenant under a claim of exclusive title in .himself, known to his cotenant is adverse to the latter."

Even though it be considered that the instrument of writing under which the grantors of the appellant claimed this land, was ineffective and void, we submit that the doctrine is well settled that it afforded them color of title and that their entry was not as tenants in common of the appellee, neither was it continued as such, but was under claim of title in themselves, and was adverse from the beginning.

*H. Dale,* for appellee.

The instrument referred to does not pass any title, either as a deed or as a will. If it be conceded that it is a deed, it is absolutely void for the reason that there is no consideration mentioned in it. On the other hand, if it be held to be a will it is invalid and of no effect for the reason that it was not attested and was never probated. In the case of *Cunningham* v. *Davis,* 62 Miss. 366, the court used the following language in construing an instrument: "An instrument, though in form a deed, and styled and acknowledged as such, but which passes no present interest, and is to have no operation until the death of the maker, and directing that the persons named as grantees is to have only the surplus .after paying his debts, being testamentary in its character, is not

a deed but a will, and to be valid must be attested and probated.''

The instrument in question purports to be a will. The testator called it his will. He says: "I make and declare this my last will." He named J. J. Herring and R. R. Herring, Jr., executors "of this my last will." He acknowledged it before an officer as "his will." Certainly no construction could be put upon it to make of it anything other than a will.

There is nothing in this record by which any one could infer that the testator intended that this instrument should be anything other than a will.

The case of *Brinson* v. *Sandifer,* 90 Miss. 43, cited in the brief of counsel for appellant is not in point with the case at bar. In that case the words "grant," "bargain," "sell," "convey" and "warrant" were used in the instrument, and it was acknowledged as a deed, *eo nomine.* In the case at bar none of these words were employed in the instrument. Instead, the word "bequeath" was used, and the instrument was acknowledged before an officer to be "his will" and not a deed. In the face of all these facts I do not see how any one could conceive the idea that the testator intended that this instrument should be anything other than a will. And I submit that, the instrument, being testamentary in its character, is a will and not a deed, and is absolutely null and void for the reason that it was not attested and was never probated, and passed no title whatever to the lands described therein, but that the title to the lands described therein descended upon the death of R. R. Herring, Sr., to all of his children, share and share alike, and that this appellee became then and there the owner of an undivided one-ninth interest in and to said lands, and that she now owns an undivided one-ninth interest in said lands.

In regard to the question of adverse possession I submit that there is no proof to show that appellee ever

knew, or had any reason to believe that this land was being held adversely to her, but on the other hand there is evidence going to show that the grantors of appellant knew that appellee was claiming an interest in the estate of R. R. Herring, deceased, and had frequently requested them to give her a deed to forty acres of the land as they had promised to do. Before the statutes of limitation begins to run against a cotenant there must be outward acts of exclusive ownership of such a nature as to give notice to the cotenant that an adverse possession is intended to be asserted. There is nothing in this record to show that there was an adverse possession intended to be asserted against appellee. The proof shows that R. R. Herring died and left the grantors of appellant in possession of the land while they were very young, and they continued to reside on the land with their mother, and to cultivate portions of it just as they did before the death of their father. Surely this would not put one of the other children on notice that they were holding adversely and claiming title thereto against all the world.

"In order to constitute a disseizin of a cotenant the fact of adverse holding must be brought home to him either by information to that effect, given by the tenant in common asserting the adverse right, or there must be outward acts of exclusive ownership of such a nature as to give notice to the cotenant that an adverse possession and disseizin are intended to be asserted." 1 Cyc. 1073.

"It seems to be well settled without dissent that mere possession, however exclusive or long continued, will not give one tenant in possession title as against his cotenant." 1 Cyc. 1075.

"It must be borne in mind, however, that stronger evidence is required to show an adverse holding by a tenant in common than by a stranger." 1 Cyc. 1073.

There is nothing in this record that appellee ever knew that the grantors of appellant were asserting an adverse claim to her and no notice was ever brought to her to that effect unless it was after she had built a home on it six years ago when they refused to give her a deed and advised her that she did not have any interest in it.

, "The possession of a tenant in common of lands is not adverse so as to put the statutes of limitation in operation against his cotenant without notice to them of an adverse holding and such an intent to oust them as justify them in proceeding against him by ejectment." *Bently et al.* v. *Callaham's Executor,* 79 Miss. 302; *Alsobrook* v. *Eggleston,* 69 Miss. 833; *Hignite* v. *Hignite,* 65 Miss. 447; *Day* v. *Davis,* 64 Miss. 253; *Johnas* v. *Franinken,* 69 Miss. 577.

This principle is everywhere recognized, and arises out of the other principle of law that the possession of one tenant in common is the possession of all.

"It can never be adverse until there is an actual ouster of the cotenants, or some act deemed by law equivalent." 1 Am. & Eng. Ency. Law, 801, 802 and notes.

"Where a wife lived with her husband on lands belonging to him, and merely continues after his death to live thereon with his children her occupancy after her husband's death would not be adverse to the children." *Smith* v. *Cunningham,* 79 Miss. 425, and cases there cited.

In the case at bar the husband died leaving his wife and four of his children living on the lands in controversy but their continued occupancy would not be adverse to the other children.

It is manifest from the evidence that appellee has been asserting a claim to an interest in her father's estate since his death, and I submit that the decision reached by the learned chancellor in the court below was correct and the case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

It is immaterial whether the instrument executed by R. R. Herring, deceased, be construed to be a deed or a will, for the reason that it is clear from the evidence that he intended, and all of his children, included appellee, so understood, to thereby vest title to the land in controversy in the parties therein mentioned as grantees or devisees, as the case may be, who thereupon entered into possession of the land, and so remained for more than ten years openly and notoriously and with the knowledge of appellee, claiming the exclusive ownership thereof under the instrument. Their title, therefore, became perfect by adverse possession.

Appellee's testimony, which was contradicted by evidence introduced on behalf of appellant, simply tends to show that her father told her, and it was understood by his other children, those named in the instrument, as well as those who were not, that she was to have forty acres of land; what particular land and whether or not it was a part of the land embraced in the instrument does not appear. It does appear, however, that her father did own or have some sort of a claim to other land, and that she at one time lived on land formerly owned by her father and not embraced in this instrument, with the consent of her brothers and sisters, and that the house in which she lived was built for her by her brothers.

Reversed, and decree here in accordance with the prayer of appellant's bill.

*Reversed.*