Cell MOORE et al., Appellants,

v.

John Stevenson WARDLAW et al., Appellees.

No. 12168.

Court of Civil Appeals of Texas, Austin.

March 12, 1975.

Rehearing Denied May 14, 1975.

of the testatrix, John Stevenson Wardlaw, Warren P. Wardlaw, and H. R. (Winkie) Wardlaw III, filed suit against Ceil Moore individually and as independent executrix of the estate of John I. Moore, deceased, in the district court of Tom Green County for an accounting for certain properties and money. Upon trial to the court, judgment was entered awarding some of the properties to each of the parties, from which all parties have appealed. In this opinion Blossie Wardlaw Moore's grandchildren will usually be referred to as "plaintiffs." Ceil Moore will be designated "defendant," and Blossie Wardlaw Moore will usually be termed "Mrs. Moore" or "testatrix."

A preliminary resumé of necessary facts follows. In 1911, Dr. H. R. Wardlaw married the testatrix. They had one child, a son, H. R. (Jake) Wardlaw, Jr., who in time married and had three children, the plaintiffs in this cause. After the death of Dr. Wardlaw, and in May of 1938, the testatrix married John I. Moore, a West Texas oil man. They had no children. John Moore had no close relatives except a brother who died in 1955. During his marriage to the testatrix, Mr. Moore was actively engaged in the oil and gas business, and in 1951, he and H. R. (Jake) Wardlaw purchased the Red Town Ranch in Anderson and Houston Counties which they operated as a partnership.

The testatrix died on March 8, 1963. Her will was duly probated in the probate court of Tom Green County. She was survived by her husband, her son, and her three grandchildren.

In 1965, John Moore married the defendant, Ceil Moore. He died in 1972. He and the defendant had no children. The will of John Moore, dated March 2, 1971, and probated in the probate court of Tom Green County, Texas, left substantially all of his property to his surviving widow, Ceil Moore.

W. B. Browder, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Midland, James G. Noland, Austin, for appellants.

George S. Finley, Smith, Davis, Rose, Finley & Hofmann, San Angelo, for appellees.

SHANNON, Justice.

This appeal requires the construction of the will of Blossie Wardlaw Moore, who died on March 8, 1963. The grandchildren

The will of Blossie Wardlaw Moore was dated October 12, 1961. The significant portions of that will are as follows:

* * *

I.

"I have heretofore conveyed my right, title and interest to H. R. (Jake) Wardlaw in and to that part of a tract of land containing approximately 13,000 acres situated in Tom Green County and lying North of the Arden Road.

I own a tract of land lying on the South side of the Arden Road along the Middle Concho River, approximately 1,800 acres. I hereby give, devise and bequeath a life estate to my son, H. R. Wardlaw and the remainder interest to my three grandchildren, to-wit: H. R. (Winkie) Wardlaw, III, Warren P. Wardlaw, and John Stevenson Wardlaw.

* * *

III.

"RED TOWN RANCH

My husband and I together with H. R. (Jake) Wardlaw, Jr. have acquired a ranch in Anderson and Houston Counties, Texas. Jakes owns an undivided one-half interest in said lands. My husband and I together own the other undivided one-half interest, each one-fourth (¼) interest together will a full interest in other lands adjoining. I give, devise, devise [sic] and bequeath my undivided one-fourth (¼) interest in said ranch and one-half (½) interest in the adjoining lands to the three grandchildren hereinbefore named, subject however, to the right hereby vested in my said husband to hypothecate or dispose of same during his life time, as he may see fit, the proceeds derived from the disposition of said property to be applied first to the payment of debts, if any, owing by my estate. If my husband does not during his life time dispose of said one-fourth interest, then and in that event I hereby give, devise and bequeath the same share and

share alike to the three grandchildren hereinbefore named.

"OIL, GAS, MINERAL AND OTHER PROPERTIES

I hereby give, devise and bequeath to my husband my community interest in and to all the oil, gas properties, royalties, minerals, fee land, machinery, equipment and all other personal property wherever located, save and except Red Town Farm hereinbefore mentioned which he may sell or dispose of in any manner as to him may seem fit. So much of said property as is not disposed of by my husband during his life time, I give, devise and bequeath a life estate in one half to my son, H. R. Wardlaw, Jr.; the other one-half to my three grandchildren herein named.

I own a mineral interest in and to the H. R. Wardlaw, Jr. lands in Irion and Tom Green Counties, Texas. This mineral interest, I give, devise and bequeath to my grandson, John Stevenson Wardlaw. I hereby appoint H. R. (Jake) Wardlaw, Jr. Independent Executor without bond, and John I. Moore."

* * *

It should be observed that H. R. Wardlaw, Jr., assigned to the plaintiffs all of his interest in and to the properties of the estate of the testatrix.

John and Blossie Moore had accumulated a substantial amount of community property at the time of her death. In general, the bulk of that property was a one-half interest in the Red Town Ranch, consisting of about 6,515 acres in Houston and Anderson Counties. In addition, they owned the full interest in about 517 acres situated in Houston and Anderson Counties which was operated as part of the Red Town Ranch. The other primary category of property owned by them was a considerable number of mineral and royalty interests located in West Texas. They also owned two lots in Midland, the surface interests in 244 acres in Crockett County, the fee in forty-one acres in Crockett County, and

the deep rights production payment reserved by Mr. Moore in the sale of oil and gas properties to Signal Oil and Gas Company.

After the death of the testatrix, John Moore and Jake Wardlaw were appointed co-independent executors of her estate, and the operation of Red Town Ranch and the oil and gas properties continued as before her death without interruption or change. No estate books were kept in connection with Mrs. Moore's estate, and all monies attributable to her community property were taken by John Moore and commingled and used with his own funds.

The plaintiffs' pleading was general. In their petition the plaintiffs asserted that upon the death of the testatrix, her husband came into custody and control of most of her property, and the property continued in his custody and control until he died. Plaintiffs alleged further that John Moore conveyed his interest and their interest in the Red Town Ranch and took into his custody and control all of the proceeds of that sale consisting of about $250,000.00 in cash and a note executed by the purchaser for $522,584.18. The plaintiffs did not join in this sale, and did not receive any of the proceeds received by John Moore. The plaintiffs prayed for an accounting by the defendant of all properties which were jointly owned by John and Blossie Moore, and a showing of what disposition was made of such properties and a judgment for those amounts due them under the accounting. The plaintiffs also requested injunctive relief to preserve the *status quo* of the estate of John Moore.

The defendant's trial pleading consisted of a second amended original answer and cross-action. In general, the defendant claimed in her cross-action that the will of the testatrix empowered John Moore to sell the Red Town Ranch during his lifetime in any manner as he deemed fit, and that since he sold Red Town Ranch there was nothing left to distribute to plaintiffs, and that plaintiffs had no title or interest for any of the proceeds or property acquired by the proceeds obtained from the sale of the ranch. With respect to those properties described in the will as "Oil, Gas, Mineral and Other Properties," the defendant, in effect, took the position in her pleading that the will should be construed to have granted fee-simple title absolute to those properties to John Moore.

The court entered an order restraining the defendant from disposing of any property acquired by her from John Moore during their marriage. Later, and by agreement, an order temporarily enjoining defendant from disposing or alienating certain properties was entered.

Upon trial, the court entered its judgment construing the will of Blossie Wardlaw Moore to have the effect of devising the plaintiffs Red Town Ranch, if such ranch were in existence at the death of John Moore, and of giving John Moore the right to hypothecate or dispose of the ranch during his lifetime. The court further construed the will to mean that any traceable proceeds or mutations from such disposition of the ranch which remained intact at the death of John Moore were devised to the plaintiffs.[1]

1. The court found as a fact that the community interest of Blossie Moore in the Red Town Ranch lands was sold by John Moore to Vernon Calhoun Packing Company in July of 1971, which sale included the fee ownership and title of John Moore and H. R. (Jake) Wardlaw, Jr., in said land, and, in addition, 81.516 acres of land acquired by John Moore after the death of Blossie Moore.

The sale to the packing company was made for a cash consideration, and the further consideration that grantee assume the balance due and owing on a promissory note in the original principal sum of $300,000.00 and for the further consideration of the packing company's vendor's lien note to H. R. (Jake) Wardlaw, Jr., in the principal sum of $421,554.74, and the packing company's vendor's lien note to John Moore, in the principal sum of $522,584.-18 bearing six and one-half percent interest.

The court further found that the packing company note payable to John Moore was part of the consideration for the undivided ½ interest in the 6515.675 acres, the full interest in the 517.532 acres and the full interest in the 81.516 acres of land abovementioned.

In response to its construction of the paragraph of the will concerning Red Town Ranch, the court awarded plaintiffs an undivided 48.945% interest in the packing company note in the original sum of $522,584.18 and in the United States Treasury Bonds in the face amount of $350,000, subject to the lien held by the bank. The court further awarded plaintiffs an undivided one-half interest in the royalty interests reserved by the grantor at the time of the sale of Red Town Ranch. Also, as a result of its construction of paragraph III of the will, the court ordered that plaintiffs recover $16,124.58 which represented an undivided 48.945% of the interest paid by the packing company in the past and the same percentage of the interest to be received in the future from the abovementioned note.

The court construed the will to have the following effect with respect to the interest of Blossie Moore to those properties described in the will as "Oil, Gas, Mineral and Other Properties": If John Moore still owned the properties at the time of his death then the plaintiffs would take an undivided one-half interest in such properties in fee-simple title, and the remaining undivided one-half interest in such properties would rest in H. R. (Jake) Wardlaw, Jr. (and his successors in title) for and during his life, and on his death, such undivided one-half interest in such properties would rest in the heirs and devisees of John Moore. Moore had the right to sell or dispose of any of such properties during his lifetime without him or his representatives being required to account to plaintiffs for the proceeds or mutations of such dispositions, whether or not such proceeds or mutations could be traced to such dispositions, and whether or not such traceable proceeds and mutations were on hand and intact at the death of John Moore.

The court determined that any stock ownership of John Moore in Moore Brothers Corporation was the separate property of John Moore, that the testatrix had no interest therein, and that plaintiffs were not entitled to any part of the properties which were conveyed to John Moore in the dissolution of that corporation.

Pursuant to its construction of that part of the will concerning "Oil, Gas, Mineral and Other Properties," the court held that plaintiffs were not entitled to any part of the cash proceeds of the sale of properties to Signal Oil and Gas Company which took place after the death of the testatrix and any such proceeds, including the mutations of such proceeds into certificates of deposit with the First National Bank of Midland, Texas, were deemed to be the property of the defendant.

Though both sets of litigants perfected their appeal from the judgment, neither is completely dissatisfied with the judgment. The defendant complains of the judgment

---

81.516/3856.88 or 2.11% of said note, amounting to $11.026.53, was for said 81.516 acres. 97.89% of said note, amounting to $511,557.65, was a part of the consideration for what had been the community interest of John Moore and Blossie Moore in such lands. 48.945% of said note constituted proceeds of Blossie Moore's community interest in the Red Town Ranch mentioned in her will.

The packing company's vendor's lien note in the amount of $522,584.18 was pledged by John Moore to the First National Bank of Midland, Texas, in January, 1972, to secure his note of the same date to said bank in the principal sum of $279,178.04. The proceeds of the Moore note were used in their entirety to purchase United States Treasury Bonds in the face amount of $350,000.00 which such Treasury Bonds were on hand at the date of John Moore's death, but were additionally pledged to secure the Moore note to the bank. The parties to the lawsuit did not contest the validity of the lien and security interest of the bank in and to the packing company note and the Treasury Bonds.

In July of 1972, the packing company paid an installment on its note, which installment was in the total amount of $189,719.53, of which amount $156,775.25 was principal and $32,944.28 was interest. The amount of this payment was paid through the First National Bank of Midland, Texas, and the principal amount was applied to Moore's note at the bank. The interest paid by the packing company was delivered by the bank to the defendant.

by twenty-one points, while the plaintiffs have seven points and subpoints of error.

The defendant first complains of the court's construction of that part of the will relating to the disposition of Red Town Ranch. She claims that the will bestowed upon John Moore a general *inter vivos* power of appointment which he had a legal right to exercise for his own benefit, and that the plaintiffs' rights were expressly contingent upon the nonexercise by Moore of his right to dispose of Blossie Wardlaw Moore's interest in any manner which he deemed proper. The defendant's argument continues that since Moore sold Red Town Ranch there was nothing left to distribute to the plaintiffs, and that the plaintiffs had no title or interest in any of the proceeds or property acquired by the proceeds obtained from the sale of Red Town Ranch.

The defendant says further that the law does not permit the tracing of proceeds or mutations of property sold by the person holding the right or power of sale or disposition. The defendant relies upon a number of cases for support of this argument, some of those being, McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (1887), Feegles v. Slaughter, 182 S.W. 10 (Tex. Civ.App.1915, writ ref'd), and Norton v. Smith, 227 S.W. 542 (Tex.Civ.App.1920, writ dism'd).

The plaintiffs, as well, claim error in the court's construction of that branch of the will relating to the disposition of Red Town Ranch. They maintain that, properly construed, the will permitted John Moore to sell the testatrix' interest in the ranch during his lifetime, but that John Moore's estate is accountable to them for *all* of the proceeds from the testatrix's interest as John Moore had no ownership in the testatrix's interest in the cash proceeds or promissory notes received in the sale of the ranch.

■ With respect to the Red Town Ranch, the will reads, "I *give, devise,* devise (sic) and *bequeath my* . . . *in-*

*terest . . . in said ranch . . . to the three grandchildren* hereinbefore named, subject however, to the right hereby vested in my said husband to hypothecate or dispose of same during his life time, as he may see fit, the proceeds derived from the disposition of said property to be applied first to the payment of debts, if any, owing by my estate." (Emphasis added)

A reading of the quoted language demonstrates that the devise of Blossie's interest in Red Town Ranch to the three grandchildren is in the form of a fee-simple grant. Tex.Rev.Civ.Stat.Ann. Art. 1291. At no place in the will is there a devise of any interest in the ranch to John Moore nor is there any devise to Moore of any of the proceeds derived from the sale of the ranch. The only rights given Moore by the will with respect to Mrs. Moore's interest in Red Town Ranch were those to "hypothecate" and the right to "dispose of," those rights being given only during his lifetime. The will directs that Moore might dispose of Blossie's interest "as he may see fit." We view the phrase, "dispose of as he may see fit," to mean that Moore might exercise his judgment when and under what circumstances to sell the ranch, thereby converting it into another form of property.

■ The grandchildren were the first takers and only takers under the will, and they had all of the powers enjoyed by a fee-simple owner except for those reserved to John Moore to hypothecate or dispose of the interest. To "hypothecate" is to pledge property without delivering possession of it to the pledgee. Black's Law Dictionary (4th Ed. 1951). The use of that term cannot imply a devise of Blossie's interest in the ranch to Moore. To "dispose of" ordinarily means to sell or alienate. See Lowe v. Ragland, 156 Tex. 504, 297 S.W.2d 668 (1957). The power "to dispose of" the ranch could not constitute a devise of the ranch since the power of disposition is not an estate, but instead is simply authority derived from the will to

dispose of the fee. Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823 (1945).

Contrary to the defendants' view we are of the opinion that the authority to hypothecate and to dispose of the ranch was not a power of appointment. A power of appointment is defined in the Restatement of Property, § 318 as follows:

"(1) Except as stated in Subsection (2), a power of appointment, as the term is used in this Restatement, is a power created or reserved by a person (the donor) having property subject to his disposition enabling the donee of the power to designate, within such limits as the donor may prescribe, the transferees of the property or the shares in which it shall be received.

"(2) The term power of appointment does not include a power of sale, a power of attorney, a power of revocation, a power to cause a gift of income to be augmented out of principal, a power to designate charities, a charitable trust, a discretionary trust, or an honorary trust."

 The essence of a power of appointment is that it gives to the donee the power to cause some person to receive less and another person to receive more. A power of appointment is *dispositive* in nature. On the other hand, a power of sale merely permits the donee to substitute money for the property sold, but does not permit him to alter the disposition of the substituted value. As such, a power of sale is administrative in nature, and is not a power of appointment. Restatement of Property, § 318, Comment on Subsection (2).

The authority to "dispose of" Red Town Ranch constituted a power of sale given to John Moore, the exercise of which permitted him to substitute money or notes for the ranch, but it did not permit Moore to alter the disposition of the substituted value. Moore did not appoint Red Town Ranch causing Vernon Calhoun Packing Company to receive more and the grandchildren to receive less, but instead he sold the ranch under the power of sale contained in the will and received proceeds, some of which were traceable and intact at his death.

 In all will construction cases, the purpose is to ascertain the intent of the testator. Philleo v. Holliday, 24 Tex. 38 (1859). To that end extrinsic evidence may be admitted to discover the testator's intent as to the sense of the words actually used in the will. Such extrinsic evidence may be considered without regard as to whether the terms of the will are ambiguous. Stewart v. Selder, 473 S.W.2d 3 (Tex.1971).

The extrinsic evidence supports the above construction of that part of the will relating to Red Town Ranch. The testatrix's family relationship was such that the natural objects of her bounty were her son and her grandsons. She desired to leave her interest in Red Town Ranch in such a way to serve two purposes: (1) so as not to hinder her husband's operation of the ranch, and (2) so as to finally vest it in her grandsons.

John and Blossie Moore married relatively late in life and had no children. John Moore had no family relationships of his own which could in any way be considered close, particularly after the death of his brother in 1955.

Mrs. Moore's relations with her grandsons were especially close. The boys were reared in San Angelo practically in the shadow of their grandmother's house. As small children, and as youths, the boys spent a great deal of time with their grandmother. Winkie, as a youngster, usually spent one night a week at her house, and as long as a month or more during summers when his parents were out of town or on vacation. While in college, the boys would still stay overnight in their grandmother's home when in San Angelo for holidays or on weekends.

As the boys matured, their grandmother continued to be interested in what they were doing. When they were away at college she wrote them frequently, and occasionally called them by telephone. When Winkie was at Southern Methodist University, Mrs. Moore visited him on campus several times.

The record makes clear that doing things for her grandsons was one of Mrs. Moore's pleasures. She remembered their birthdays, graduation days, and Christmas days with expensive presents. She gave the two older grandsons an automobile each. She had offered on several occasions to buy Winkie another automobile when he enrolled in college, but he had told her that the old one was still serviceable. She also gave the boys money, rifles, and fine paintings. When the boys went on trips she usually gave them money for expenses.

Mrs. Moore's love for her grandsons continued without interruption until her death. One illustration suffices as a demonstration of her intention of continuing to surround herself with those whom she loved most. She caused her old house to be pulled down, and on the same lot she caused to be built a large residence known as River Terrace. River Terrace had two kitchens and five bedrooms. She assigned each grandson a bedroom for his use then or in later years so that if he lived away from San Angelo he and his family, if married, could stay close to her while visiting in San Angelo.

The extrinsic evidence also aids in understanding Mrs. Moore's intent concerning the need for flexibility in the management of her property represented by her interest in Red Town Ranch. She knew John Moore to be a shrewd businessman and she doubtless had confidence in his ability, as changed conditions required, to convert the investment represented by the ranch into other forms of property. Red Town Ranch, located on the Trinity River in Anderson and Houston Counties, was not convenient for either John Moore or Jake Wardlaw to supervise. A visit to the ranch entailed a 690-mile round trip by automobile from Tom Green County, or a plane trip to Dallas and a trip by a rented automobile from Dallas to the ranch. By 1961, both Moore and Wardlaw were getting old, and Wardlaw was not in good health. At the time that she signed her will, Mrs. Moore could well foresee that in the future consideration might have to be given to the sale of the ranch. Moreover, it is common knowledge that cattle ranching is a business subject to rather dramatic market fluctuations, and that the price of land during the time involved was increasing without regard to income to be derived from its utilization in farming or ranching. That being so, Mrs. Moore was doubtless interested in giving her husband a free hand to dispose of the ranch when an advantageous offer was made.

The plaintiffs were entitled to trace and obtain the proceeds or mutations from the sale of Red Town Ranch. See Edds v. Mitchell, *supra*. The holding of that case is that if a testator devises his land to one for a term of years or for life, with the right of full disposition and the right to use the proceeds without accounting to anyone, then the remainderman is entitled to trace the proceeds of a sale. In the case at bar, the testatrix devised her interest in land to her grandchildren in fee, subject only to the right of her husband to dispose of the same during his lifetime, but without leaving him any estate in the land and without leaving him any right to use the land or use the proceeds of the sale of the land. In our judgment if a remainderman is permitted to trace the proceeds of a sale of the land, then a fee owner must surely be accorded that right.

The wills involved in McMurray v. Stanley, *supra*, Feegles v. Slaughter, *supra*, and Norton v. Smith, *supra*, gave title in fee to the first taker, and also in each of those wills to the first taker was given the right to "use" and "control" the property. In the case at bar, the will of Mrs. Moore de-

vised Red Town Ranch to her grandchildren who are not only the first takers, but are also the only takers, no estate being allotted to Mr. Moore.

The plaintiffs also complain that the court erred in not entering judgment in their favor for 48.945% of $132,351.98 which represented the sums received by Moore for the sale and lease of cotton allotments from Red Town Ranch during the years 1965 through 1968. The court made no specific finding of fact concerning the sums received by Moore from the sale or lease of cotton allotments, but the plaintiffs' contention was disposed of unfavorably by the court in that part of the judgment which reads, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief prayed for herein by Plaintiffs, not specifically granted in this Judgment, is denied."

The plaintiffs' complaint will not be sustained. An examination of the record shows that the cattle operation on the Red Town Ranch, on the whole, was not a very profitable venture for John Moore and H. R. Wardlaw, Jr. In 1965 and 1966 there was no distribution of money to the partners, though in 1967 and 1968 each partner received $24,365.54 and $15,297.00 respectively. At the time of the sale of the ranch to Vernon Calhoun Packing Company there was considerable indebtedness of the operation. During the years 1965 through 1968 there were sales of livestock together with the sales and leases of the cotton allotments. Balancing the income against the expenses, there were operating losses during those years. There was no showing that Mr. Moore received during those years a profit from the operation of ranch nor was there a showing that he took more money from the ranching operation than he paid into it. In effect the court rendered an accounting between the parties, based upon the credible evidence, and was convinced that no sums of money were due to the plaintiffs from the sale and lease of the cotton allotments.

That part of the will concerning "Oil, Gas, Mineral and Other Properties" reads as follows:

"I hereby give, devise and bequeath to my husband my community interest in and to all the oil, gas properties, royalties, minerals, fee land, machinery, equipment and all other personal property wherever located, save and except Red Town Farm hereinbefore mentioned which he may sell or dispose of in any manner as to him may seem fit. So much of said property as is not disposed of by my husband during his life time, I give, devise and bequeath a life estate in one half to my son, H. R. Wardlaw, Jr.; the other one-half to my three grandchildren herein named."

With respect to that part of the will concerning "Oil, Gas, Mineral and Other Properties," the defendant claims that the testatrix's language should have been construed so as to grant John Moore a fee simple absolute. The defendant says further that Moore's fee interest should not have been diminished by the "ambiguous, uncertain subsequent clause naming the plaintiffs and their father, H. R. Wardlaw, Jr."

The plaintiffs also complain of the court's construction of this part of the will. The plaintiffs say that the court erred in holding that Moore had the right to sell or dispose of those properties during his lifetime without being required to account to the plaintiffs for the proceeds of such dispositions whether or not such traceable proceeds and mutations were on hand at the death of Moore. The plaintiffs also complain that the court erred in construing the will to the effect that the remainder interest in an undivided one-half of the "Oil, Gas, Mineral and Other Properties" on the death of H. R. (Jake) Wardlaw, Jr., vested in the heirs and devisees of John Moore, rather than in the plaintiffs.

■ At common law and in many states the rule is that wherein there is a devise by language sufficient to pass the fee, a

purported limitation over of so much of the property as is not disposed of by the first taker is void as being repugnant to the grant of the fee-simple estate in the first taker. Page, Wills § 37.26 (1961). That is not the rule in Texas. McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412 (1887). In Texas an executory limitation over of property undisposed of by the first taker of the fee is recognized. First National Bank of Corsicana v. DeFoe, 384 S. W.2d 926 (Tex.Civ.App.1964, writ ref'd).

■ In the case at bar, the first sentence of the "Oil, Gas, Mineral and Other Properties" paragraph of Mrs. Moore's will, standing alone, would pass a fee-simple title of her interest to her husband by the express terms of Tex.Rev.Civ.Stat.Ann. Art. 1291. The second sentence in that paragraph, however, constitutes a valid limitation as to the property undisposed of at the death of her husband. The estate of her husband in those properties, as so limited, has been termed as a conditional or defeasible fee. Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876 (1948), First National Bank of Corsicana v. DeFoe, *supra.*

■ By the terms of the above paragraph John Moore was empowered ". . . *during his lifetime* . . ." to dispose of the property. (Emphasis added) He could not, though, devise the property by will. Kilpatrick v. Cassel, 19 S.W.2d 805 (Tex.Civ.App.1929, no writ). John Moore held title to any proceeds or mutations of sales of the property made during his lifetime, and such property was subject to his testamentary disposition. First National Bank of Corsicana v. DeFoe, *supra.*

■ The third sentence in the "Oil, Gas, Mineral and Other Properties" paragraph provides that the plaintiffs take an undivided one-half of the devised property which had not been disposed of during Moore's lifetime. The plaintiffs are deemed to have taken that interest in fee. Tex.Rev.Civ.Stat.Ann. Art. 1291. By vir-

tue of the same sentence H. R. Wardlaw, Jr. took a life estate in one-half of the devised property that Moore had not disposed of during his life. The will failed to provide a remainder interest to take upon the death of H. R. Wardlaw, Jr. As mentioned above, the trial court construed this part of the will to mean that the remainder interest in an undivided one-half of the "Oil, Gas, Mineral and Oother Properties" upon the death of H. R. Wardlaw, Jr., vested in the heirs and devisees of John Moore.

In terms of the law of future interests the issue presented is whether an executory limitation of less than a fee (the life estate in H. R. Wardlaw, Jr.) will operate to defeat the preceding estate (the defeasible fee of John Moore), or whether the lesser estate will be "carved out" of the preceding estate, thereby making the defeasible fee absolute at the termination of the lesser estate. 140 A.L.R. 941. We have not found Texas authority to resolve the problem.

Our view is ⟨that the language of this portion of the will created a possibility of reverter in the testatrix and upon the termination of the life estate of H. R. Wardlaw, Jr., one-half of the property which remained undisposed of at the death of John Moore vested in her heirs, the plaintiffs. The rationale for this view follows. When the testatrix devised the defeasible fee in the "Oil, Gas, Mineral and Other Properties" she conveyed less than she had. Considering the paragraph as written, not only had Mrs. Moore devised less than she had to the first taker, John Moore, but upon the termination of John Moore's defeasible fee, she had devised less than she had to the executory taker. See Simes & Smith, The Law of Future Interests § 284 (1956). In addition, we view this construction as consistent with the testatrix's stated intent to limit the interest of her husband in the property to the period of his lifetime.

We have discussed those points of error which we view as controlling. The judg-

ment of the district court will be modified to read that the remainder interest in an undivided one-half of the "Oil, Gas, Mineral and Other Properties" of Blossie Wardlaw Moore on the death of H. R. (Jake) Wardlaw, Jr., vested in the heirs of Blossie Wardlaw Moore. Except as indicated, the judgment of the trial court is in all things affirmed.

Judgment modified, and as modified, affirmed.