Leona NAJVAR et al., Appellants,

v.

Annie VASEK et al., Appellees.

No. 1237.

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1978.

Rehearing Denied April 20, 1978.

**204**

Terrell S. Mullins, Wilbur H. Baber, Jr., Hallettsville, for appellants.

Armond G. Schwartz, Hallettsville, for appellees.

## OPINION

NYE, Chief Justice.

This is a will construction case. Plaintiffs (the appellants herein), Leona Vasek Najvar, Emily Vasek Najvar and Robert Vasek, the only heirs-at-law and descendants of the testator, Frank Vasek, brought suit seeking a declaration that the devise of real property contained in the will had lapsed and should pass to them under the laws of descent and distribution because the sole devisee, Bohumil Vasek, the testator's brother, had predeceased the testator. The defendants, Mrs. Annie Vasek, Eugene Vasek, Alvin Vasek, Jr., and Julia Vasek Schilbab, widow and children of Alvin Vasek (the son of Bohumil Vasek, the testator's brother), answered by general denial and by cross-action seeking a declaration that the will made Alvin Vasek a substitute devisee. In the alternative, the defendants alleged that the language of the will created a trust for the benefit of Alvin and that the property should therefore go under the will to them. Trial was to the court which found in favor of the defendants and awarded them title and possession of the real property. Plaintiffs have perfected their appeal to this Court.

The testator, Frank Vasek, died domiciled in Lavaca County, Texas, on or about September 21, 1967. The last will and testament of the testator, dated March 12, 1941, was admitted to probate on January 16, 1969. In order to clarify the various portions of the testator's will, we add our comments to each section to bring into focus the dispute between the parties. The will of Frank Vasek contains the following major provisions.

"I." (Payment of Debts).

(The Attempted Disinheriting of Testator's Children).

"II. I hereby direct the sum of one dollar to each be paid to my children, Emily, Robert, and Leona, by my executor hereinafter named out of my personal property within one year after my death."

(The Sole Legatee, Testator's Second Wife).

"III. After the payment as enumerated in paragraph one and two, I hereby give and bequeath all my personal property, of every kind and nature, be it money, cattle and any and all personal property, after payments are made therefrom as enumerated in paragraph one and two to my beloved wife, Agnes Vasek."

(A Life Estate in the Real Property to the Second Wife).

"IV. I hereby direct my wife, Agnes Vasek, shall use, occupy, and derive benefit from all the real estate, the same being my separate estate, during her natural life and after her death."

(The Remainder to the Devisee, Testator's Brother).

"I give and bequeath all the real estate on my die (sic) seized and possessed of to my beloved brother, Bohumil Vasek; to have and to hold unto him the said Bohumil Vasek, his heirs and assigns in fee simple forever."

(The Disputed Portion of Testator's Will).

"It being my wish however for my beloved brother to keep the property for his son Elvin."

(The Appointment of Testator's Brother, Bohumil, as Executor).

At trial the undisputed facts and stipulations were:

1) The only surviving heirs-at-law are the testator's children who are the plaintiffs, appellants herein.

2) Agnes Vasek, second wife of the testator, predeceased her husband by some ten days.

3) The bequest of personal property contained in paragraph III had lapsed and passed intestate to the plaintiffs because the testator was predeceased by his wife.

4) Bohumil Vasek, brother of the testator, predeceased the testator by more than four years.

5) Alvin Vasek was the son of Bohumil Vasek and nephew of the testator and was the same person known as Elvin Vasek and is the same person last named in the disputed fourth paragraph of the will.

6) Alvin Vasek was alive at the time of the testator's death, but died subsequently in 1971 (after the death of his father, Bohumil Vasek, and his uncle, the testator).

7) Alvin Vasek was survived by his widow, and three children, who are the defendants and appellees herein.

The parties agree that this lawsuit only concerns the disposition of the testator's real property. The dispute in the trial court and here on appeal is the proper construction to be given to paragraphs II and IV of the will.

The plaintiffs contended at trial and here that the devise of real property contained in paragraph IV had lapsed because the devisee, Bohumil Vasek, had predeceased the testator and because there was no residuary clause in the will, the testator died intestate as to his real property. The defendants, wife and children of testator's nephew, contended that paragraph II clearly evidenced that the testator intended to disinherit his children, the plaintiffs, and that to construe the will in the manner sought by the plaintiffs would completely contravene the testator's express intention.

During the course of the trial, the defendants introduced evidence of a strained relationship between the testator and his children and of an extremely close relationship between the testator and his brother, Bohumil, and his nephew, Alvin. On the basis of this parol evidence and the terms of the will, the trial court entered judgment vesting title to and possession of the real property in the defendants. In support of its judgment, the court filed numerous findings of fact and conclusions of law to the effect that the plaintiffs were disinherited under the will. The trial court filed findings to support its construction of the will on three theories:

1) The provision of paragraph IV of the will "it being my wish, however, for my brother to keep the property for his son Elvin" should be construed to be a substitute devise to Alvin Vasek in the event that Bohumil Vasek predeceased the testator.

2) The language of paragraph IV created a trust in favor of Alvin Vasek.

3) There was a gift by implication to Alvin Vasek under the general plan of distribution drawn from the four corners of the will.

4) Finally, the court found that the plaintiffs had waived the right to contest the bequest to Alvin Vasek by filing the will for probate and by plaintiff Leona Vasek Najvar qualifying as Administrator with the Will Annexed.

In point of error one, the plaintiffs complain generally that the trial court erred in admitting into evidence over their objections parol evidence concerning the testator's intent in drafting his will because the will was clear and unambiguous and therefore the testator's intent should have been gleaned only from the four corners of the will. Defendants, on the other hand, contend that parol evidence is always admissible, regardless of any ambiguity in the will, to permit the court to gain perspective and to place itself in the testator's position at the time the will was drawn. For this reason, defendants contend that there are only two issues in this case: 1) whether the extrinsic evidence of the testator's situation when the will was executed was admissible; and 2) does this evidence support the trial court's findings that the testator intended to disinherit the plaintiffs and give the property to defendants by intestate succession through the nephew, Alvin Vasek?

■ The respective contentions advanced by the plaintiffs and defendants do not agree entirely with the rules relating to parol evidence in a will construction case. The cardinal rule in construing a will is to seek and enforce the intention of the testator. *Philleo v. Holliday,* 24 Tex. 38 (1859); *Moore v. Wardlaw,* 522 S.W.2d 552 (Tex. Civ.App.—Austin 1975, writ ref'd n. r. e.); *Gonzalez v. Gonzalez,* 457 S.W.2d 440 (Tex. Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). To that end extrinsic evidence may be admitted to discover the testator's intent as to the sense of the words actually used in the will. *Stewart v. Selder,* 473 S.W.2d 3 (Tex.Sup.1971); *In Re Estate of O'Hara,*

549 S.W.2d 233, 238 (Tex.Civ.App.—Dallas 1977, no writ); *Moore v. Wardlaw,* 522 S.W.2d 552, 558 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); *Bailey v. Price,* 495 S.W.2d 378, 380 (Tex.Civ.App.—Eastland 1973, writ ref'd n. r. e.); 10 Texas Practice, Section 561 (1968). Even though the court may receive and consider such evidence concerning the situation of the testator, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time the will was executed, in the last analysis, the intention of the testator must be found from the words of the will. *Stewart v. Selder, supra* at p. 7. The only purpose or justification for the admission of extrinsic evidence is to explain and arrive at the testator's meaning which is set forth in the words of the will. When there is no dispute as to what the written words in a will mean, extrinsic evidence cannot be received to: show that the testator intended something outside of or independent of such written words; to add words to those in the will; contradict the language in the will; or to take words away from those in the will. This is so even though the court may believe that the actual disposition of the testator's property which results through changing circumstances was not contemplated by him. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888–889 (1960); see also *Stewart v. Selder, supra.*

■ It is evident from reading the record that the parol evidence introduced pertained to the circumstances of the testator prior to and at the time the will was dated in March of 1941. This evidence established that the testator spoke only broken English, preferred to speak in his native language, Czech, and could not read English. The will in question was drafted by a layman who spoke fluent Czech. The testator was divorced by his first wife, Rosie, and at the time of the divorce, the plaintiffs, (testator's children), went to reside with their mother, Rosie. After the divorce, Rosie and the plaintiffs lived in the house on the farm and the testator lived in a barn on a portion

of the land because he had no other home. In 1936, the testator married Agnes Schindler Vasek (the legatee named in the will), who went to live with him with her two children by a previous marriage. The evidence also indicated that the relationship between the testator and his previous wife and children deteriorated. They did not visit each other and the children did not recognize him. On the other hand, the evidence indicated that there was an extremely close relationship between the testator and his brother, Bohumil, and his nephew, Alvin. Alvin and Bohumil helped the testator build a home for his new family. In addition, the testator, Bohumil and Alvin worked together on the farm, drank beer and played dominoes together. Because the testator and his second family owned no automobile, Alvin would often provide transportation to and from town. There is testimony in the record that the relationship that existed between the testator and his nephew, Alvin, was more like a father-son relationship than uncle and nephew.

The plaintiffs, on appeal, do not complain specifically of any of the above mentioned evidence but complain generally that none of it should have been admitted by the trial court. We find that the trial court admitted this evidence on the basis that pertained to the circumstances surrounding the execution of the testator's will. The plaintiffs on appeal have made no attempt to show that this evidence is not relevant as such. We do agree, however, that the extrinsic evidence tending to show the strained relationship between the testator and the plaintiffs and an extremely close relationship between the testator and his nephew, Alvin, cannot support the trial court's final construction of the testator's will. Although extrinsic evidence was admissible to shed light on the testator's intent, as to the words actually contained in the will, such evidence should not have been relied upon to rewrite or enlarge the express provisions of the will.

There is some evidence in the record to support the trial court's finding that the testator intended to disinherit his children. This finding may be further strengthened by clause II of the will in which the testator left each of his three children only $1.00 out of the proceeds of his personal property. Before considering whether the trial court's construction of the will can be upheld on any of the three theories relied upon by the trial court, it is helpful to mention what a testator must do in Texas if he wishes to disinherit his lawful heirs.

■■■■ Texas does not have a "forced heirship" statute protecting children against disinheritance by either mother or father. See 9 Texas Practice, § 162 (1968). In order to disinherit an heir, however, a testator must effectively dispose of his property to another under the provisions of his will. As stated many years ago by the Supreme Court in *Philleo v. Holliday*, 24 Tex. 38 (Tex.Sup.1859):

" . . . The right of the heir is defeated only by a substitution of some person to take in his place, *and not by a declaration, or express intention, that he shall not take.* Hence, though the heir is expressly disinherited, as if a man by his will should declare that his heirs or next of kin shall have no part of his estate, and not direct who shall have it, still the heir would take, not under the will, but under the law; for there must be in the will a devisee, to supplant the heir. . . ." (Emphasis added).

If the testator fails to make an effective disposition of his property to another, the property will pass to his heirs at law under the laws of intestate succession even though this might be against the testator's intention, however plainly manifested. *Poole, et al, Trustees of Calvary Missionary Baptist Church v. Starke*, 324 S.W.2d 234 (Tex.Civ. App.—Fort Worth 1959, writ ref'd n. r. e.). Accord, *Adams v. Masterson*, 415 S.W.2d 535 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.).

The central issue in this case is whether, assuming that the testator did intend to disinherit his children, the terms of his will effectuated this intent. We must determine whether or not any of the three theories relied upon by the trial court (substitu-

tion, trust, or implied gift) will support the trial court's construction of the will as disinheriting his lawful children and vesting title to the land in question in the heirs of Alvin Vasek, his nephew. If it did not, then title to the property in question vested in plaintiffs under the laws of descent and distribution.

In point of error two, the plaintiffs contend that the trial court erred in holding that the devise of real property to the testator's brother, Bohumil Vasek, did not lapse because paragraph IV of the will created a substitute devise to Alvin Vasek. The defendants argue that because the testator did not intend for the plaintiffs to inherit his realty, he intended that the title to the real property vest in Alvin Vasek because the trial court correctly held that the word "wish" was mandatory and that portion of the will passed title to Alvin as a substitute devisee.

■ At common law a devise in a will to one who predeceases the testator lapsed unless the will provided for a substitutional legatee or devisee. *Chadwick v. Bristow,* 146 Tex. 481, 208 S.W.2d 888, 890 (1948); see 10 Texas Practice § 573 (1968). Texas has an "anti-lapse" statute which prevents the lapse of a devise or bequest if it is made to a "child or other descendant" of the testator, and the devisee or legatee, who died during the lifetime of the testator, leaves "children or descendants" who survive the testator. Tex.Prob.Code Ann. § 68 (1956). This statute, however, does not apply and will not prevent a devise or bequest from lapsing in situations, such as in this case, where the devisee or legatee is a collateral relative and not a child or descendant of the testator. *Logan v. Thomason,* 146 Tex. 37, 202 S.W.2d 212 (1947); *Chadwick v. Bristow, supra; Bomar v. Carstairs,* 124 Tex. 492, 79 S.W.2d 841 (1935). A lapsed testamentary gift will pass by intestate succession unless the will contains a general residuary clause or provides for a substitute devisee or legatee. *Bittner v. Bittner,* 45 S.W.2d 148, 152 (Tex.Comm'n App.1932, judgm't adopted).

■ Where there is no general residuary clause in the will, (as in this case), in order to prevent a lapse, the testator must declare, either expressly or in terms from which it can be clearly determined, what person or persons he intended to substitute for the legatee or devisee dying during his lifetime. The terms of the will must clearly show that the testator intended that the gift should not lapse and that the testator clearly designated the persons or persons he intended to be the substitute legatee or devisee. *Bittner v. Bittner, supra; Morton v. Hill,* 355 S.W.2d 269 (Tex.Civ.App.—Eastland 1962, writ ref'd n. r. e.); *Coleman v. Jackson,* 126 S.W. 1178, 1180 (Tex.Civ. App.1910, writ ref'd n. r. e.); accord, *Rossi v. Rossi,* 448 S.W.2d 162 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.); *Tabor v. National Bank of Commerce of San Antonio,* 351 S.W.2d 126 (Tex.Civ. App.—San Antonio 1961, no writ); *Lightfoot v. Poindexter,* 199 S.W. 1152, 1160 (Tex.Civ.App.—Austin 1918, writ ref'd); *Hagood v. Hagood,* 186 S.W. 220, 226 (Tex. Civ.App.—Fort Worth 1916, writ ref'd).

■ Here it is undisputed that the testator's brother, Bohumil Vasek, predeceased the testator by at least four years. Under the provisions of paragraph IV the testator bequeath a life estate in the land to the testator's wife with the remainder in fee simple to the testator's brother, Bohumil. The phrase "to have and to hold unto him the said Bohumil Vasek, his heirs and assigns in fee simple forever" are not words of substitution but designate that the testator intended to bequeath to his brother, if living, a remainder in fee simple. See *Willis v. Snodgrass,* 302 S.W.2d 706, 711 (Tex. Civ.App.—Texarkana 1957, writ ref'd n. r. e.); 10 Texas Practice § 573, p. 363 n. 1 (1968). See also *Pool v. Pool,* 300 Ill. 557, 133 N.E. 273 (1921); *Farnsworth v. Whiting,* 102 Me. 296, 66 A. 831 (1906); *In Re Spier's Estate,* 224 Mich. 658, 195 N.W. 430 (Mich.1923); *In Re Reynolds Will,* 109 Miss. 453, 178 N.Y.S. 821 (Sur.Ct.N.Y.1919), aff'd mem., 192 App.Div. 937, 181 N.Y.S. 951 (N.Y.1920).

The only other language in paragraph four which could be construed to limit the bequest of a fee simple remainder in Bohumil, or to otherwise create a substitute devise to Alvin is the following sentence: "It being my wish however for my beloved brother to keep the property for his son Elvin." The expression, "it is my wish", is precatory in its nature and not mandatory. It cannot be construed as mandatory, unless, from the reading of the entire will (from the four corners), and by considering the circumstances and situation of the testator and beneficiaries, it becomes clear that the intention of the testator was to create such a mandatory bequest. *Byars v. Byars,* 143 Tex. 10, 182 S.W.2d 363 (1944); *Haltom v. Austin National Bank,* 487 S.W.2d 201 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.); *Ricketts v. Alliance Life Ins. Co.,* 135 S.W.2d 725 (Tex.Civ.App.— Amarillo 1939), writ dism'd jdgmt cor.). Extrinsic evidence, along with the language of the will, can be considered in determining whether "wish" should be given to a mandatory construction rather than its usual precatory construction.

It is clear to us from a reading of the will that the testator intended to bequeath Bohumil a remainder in fee simple. He merely expressed a wish that Bohumil would not sell or otherwise dispose of the property during his lifetime but would eventually leave or give the property to his son, Alvin. Had Bohumil survived the testator it would create a conflict with, and would strain the meaning of, the words used in paragraph IV to say that the testator imposed a mandatory limitation upon Bohumil's discretion to exercise the rights attendant to ownership of title in fee simple, including the right to dispose of the property in any way that he might choose. See *Ricketts v. Alliance Life Ins. Co., supra.* Had the testator intended to create a life estate in Bohumil and a remainder in Alvin, or to otherwise effectively limit the fee simple title bequeathed to Bohumil, it was within his power to do so. It is apparent from the initial language in paragraph IV creating a life estate in his wife that the testator knew how to create a life estate.

Had it been his intention to create such a life estate in his brother, Bohumil, he knew how to do so.

Our conclusion that the word "wish" cannot be given mandatory construction is further supported by the other provisions of the will which are couched in forceful terminology: "I hereby direct", "I hereby give and bequeath", "I hereby direct . . . and after her death I give and bequeath", and "I hereby appoint". These phrases clearly indicate that the testator understood and could distinguish between mandatory and precatory expressions. The extrinsic evidence does not support defendants' contention that "wish" should be given a mandatory construction. The evidence only indicates that the testator had a close relationship with both Bohumil and Alvin, but there was no evidence that the testator preferred Alvin to Bohumil or vice versa. The evidence does not indicate that the testator intended any other result other than that which he clearly expressed in paragraph IV, i. e., to bequeath a remainder in fee simple to Bohumil with the "wish" or hope that Bohumil would keep the property and finally bequeath it to his son, Alvin.

Even if the testator did intend to disinherit his children, such an intent cannot be substituted for an intent to place mandatory restrictions upon the clear bequest to Bohumil for the remainder in fee simple or to create a substitute devise in Alvin. In order to effectuate an intent to disinherit his children, the provision of his will must effectively put title in another. This he failed to do. He did not provide for a substitute devisee in the event Bohumil predeceased him. The testator failed to recognize either the contingency of his second wife (paragraph III) or Bohumil (paragraph IV) predeceasing him. In both instances the testator failed to provide for a substitute bequest or devise. The reference to Alvin in paragraph IV does not clearly indicate the testator intended Alvin to be a substitute devisee in the event Bohumil predeceased the testator. Plaintiffs' point of error two is sustained.

Closely related to the issue of substitution is the question of whether the language in paragraph IV created a trust of the real property for the benefit of Alvin Vasek. In point of error number three, the appellants contend that this language is insufficient in law to create a trust. For many of the same reasons that the will did not create a substitute devise in Alvin, we agree that the will cannot be construed to create a trust in his behalf.

There are no particular form of words that are required to create a trust. Technical words expressly creating a trust are not essential. It is sufficient if the intent to create a trust appears reasonably clear from the entire instrument construed in light of the circumstances which attended its execution. To create a trust by will or any other instrument, it must identify the person, the property, and the purpose of the trust. It is not absolutely necessary that the legal estate be devised into specific terms to the trustee, so long as the intent to create a trust is otherwise clear. *Gonzalez v. Gonzalez,* 457 S.W.2d 440, 447 (Tex.Civ. App.—Corpus Christi 1970, writ ref'd n. r. e).

Looking to the testator's will as a whole, the only language even remotely suggesting that a trust was intended is the single precatory sentence "It being my wish however for my beloved brother to keep the property for his son Elvin." It is evident that this precatory language did not limit the bequest to Bohumil (which lapsed), but merely expressed a hope, an opinion or a request, see *Rich v. Witherspoon,* 208 S.W.2d 674 (Tex.Civ.App.—Dallas 1948, no writ); 61 Tex.Jur.2d § 261, p. 408 (1964); *Paton v. Baugh,* 265 S.W. 250 (Tex.Civ.App. —Dallas 1924, no writ). The judgment of the trial court awarding the title and possession of the land to the heirs of Alvin Vasek cannot be supported under the trust theory relied upon by the trial court either by the evidence or the words of the trust. Appellants' point of error three is sustained.

In point of error six, the appellants contend that the trial court erred in holding that there was a gift by implication to Alvin Vasek. Implied gifts are not favored in Texas and are to be strictly construed in accordance with certain rules: 1) there must be so strong a probability of an intention to make a gift that an intention contrary to that imputed to the testator cannot be fairly supposed; 2) the language relied on to support the implied gift must be clear, and the implication must be necessary to carry out a plainly expressed intention; and 3) an implied gift cannot rest on conjecture. *Neinast v. Brauckmuller,* 401 S.W.2d 113, 116 (Tex.Civ.App.—Houston 1966, no writ); *Gallagher v. O'Brien,* 158 S.W.2d 345, 347 (Tex.Civ.App.—San Antonio 1941, no writ); *Gay v. City of Fort Worth,* 4 S.W.2d 268, 271 (Tex.Civ.App.— Fort Worth 1928, writ dism'd); 61 Tex. Jur.2d § 255 (1964). Reviewing all of the extrinsic evidence and the will from all four corners we hold that the judgment of the trial court cannot be upheld on an implied gift theory. Plaintiffs' sixth point of error is sustained. *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885 (1960).

In view of our disposition of these points of error, we conclude that plaintiffs' remaining points of error (four, five and seven) should also be sustained. The plaintiffs are heirs at law of the testator, not beneficiaries under the will, and as such, they did not waive their right to seek a construction of the will.

We, therefore, conclude that the judgment of the trial court must be REVERSED and judgment here RENDERED vesting title to the land described in paragraph IV of the testator's will in favor of the plaintiffs.

REVERSED AND RENDERED.